PEOPLE v ROBINSON

1. ARREST—DELAYED ARREST—DUE PROCESS.

Delay in arresting defendant for escaping from prison until 32 days after his return to the prison was not a violation of due process where no evidence of prejudice which would be violative of due process was offered by defendant.

2. JURY—SELECTION—VOTER REGISTRATION LISTS.

The use of voter registration lists as a source of names for jury duty does not result in an illegally-constituted jury because the use of these lists does not result in exclusion of a cognizable group or class of citizens.

3. ESCAPE—PRISONS—ADMINISTRATIVE PROCEEDING.

Solitary confinement, loss of "good time", and denial of other usual rights prior to conviction for escape does not constitute cruel and unusual punishment; and the later arrest, conviction, and sentencing for escape does not constitute double jeopardy because disciplining for the infraction of a prison rule is an administrative proceeding and not a criminal proceeding (MCLA 800.33).

4. CRIMINAL LAW—PRELIMINARY EXAMINATION—DELAY.

A delay in holding a preliminary examination 14 days beyond the statutory period of 10 days did not violate defendant's right to due process where defendant did not present evidence of prejudice (MCLA 766.4, 766.7).

5. EVIDENCE—WITNESSES—RECORDS—RIGHT TO EXAMINE.

Opposing counsel has the right to examine the records or documents that a witness is testifying from, but not the entire book from which the records at issue came.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 2.
[2] 47 Am Jur 2d, Jury § 136 *et seq.*
[3] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 17.
[4] 21 Am Jur 2d, Criminal Law § 445.
[5] 58 Am Jur, Witnesses § 533.
[6] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 20.

6. Escape—Minimum Sentence—Plea of Guilty—Jury Trial.

A sentence of 2 to 5 years upon conviction of escaping from
prison where defendant demanded a jury trial should be va-
cated and remanded for resentencing where this was a depar-
ture from the ordinary minimum sentence of 1-1/2 years in
cases where defendants pled guilty of that offense and where
the trial judge failed to articulate the reasons for the sentence
on the record.

Appeal from Jackson, Charles J. Falahee, J.
Submitted Division 2 January 6, 1972, at Detroit.
(Docket No. 11917.) Decided May 30, 1972.

Robert L. Robinson was convicted of escape from
prison. Defendant appeals. Affirmed and remanded
for new sentencing.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Bruce Barton,* Pros-
ecuting Attorney, and *Paula Hosick,* Chief Appel-
late Attorney, for the people.

*Carl Conrad,* for defendant on appeal.

Before: LEVIN, P. J., and HOLBROOK and BRON-
SON, JJ.

HOLBROOK, J. Defendant was convicted of escap-
ing from prison,[1] and sentenced to a term of two to
five years. The pertinent facts are as follows:

On August 24, 1968, defendant was a trustee
assigned to work in the kitchen at Jackson Prison.
The kitchen is located outside the prison walls. At
the 7:30 a.m. count, the officer assigned to the
kitchen area discovered defendant was missing.
Defendant did not have permission to leave the
prison area.

On October 3, 1968, defendant was taken into

---

[1] MCLA 750.193; MSA 28.390.

custody in the City of Detroit and transported back to the confines of the Jackson Prison.

On November 8, 1968, defendant was arrested and arraigned on the charge of escape from prison.

On December 2, 1968, a preliminary examination was held.

After several intervening proceedings had taken place, a jury trial took place on April 21, 1970. The jury returned a verdict of guilty, and defendant was sentenced to prison for a term of from two to five years. Defendant appeals from this conviction.

Defendant raises six issues on appeal, which we state and deal with in proper order.

I.

Whether an extended delay in arrest constituted a violation of an accused's constitutional right to due process?

Thirty-two days passed between the time defendant was returned to prison and his arrest. Defendant asserts that the failure to arrest showed the purpose was to deprive him of the use of his memory to establish witnesses and to arrange a defense, and to impair the will and resistance of the defendant, which resulted in prejudice.

The people argue that defendant was not denied due process because of the delay in arrest. A mere lapse of time did not amount to a denial of a constitutional right.

Defendant relies upon *People v Hernandez,* 15 Mich App 141 (1968), to place the burden of proof upon the people to show that prejudice had not resulted from the delay in the arrest.

We point out that *Hernandez* did not place the burden of proof upon the people to justify a delay

in arrest unless evidence of prejudice which results in a violation of due process is shown by defendant. Defendant, in the instant case, has not shown any evidence of prejudice caused by the delay in arrest. In fact, the first appointed defense counsel requested he be relieved of the appointment because of defendant's attitude and refusal to cooperate with him in preparation of a defense, and because defendant wanted him discharged. Defendant's second appointed counsel also noted he could not get any cooperation from defendant and could not adequately prepare a case. Defendant also dismissed this counsel, though the trial judge did request counsel to stay in the courtroom.

Defendant has not offered any evidence of prejudice which would be violative of due process. *People v Albert White,* 27 Mich App 432 (1970); *People v Iaconis,* 31 Mich App 703 (1971).

## II.

Whether a jury array based on voter registration lists systematically exclude a just proportion of black persons from serving as jurors, contrary to defendant's constitutional rights?

It is claimed by defendant that in Jackson County black jurors do not serve in the same proportion that they bear to the population; and selection from voter registration lists will assure a disproportionate number of white persons selected to serve on a jury and blacks do not register and vote in the same ratio as do whites.

The people assert that the use of voter registration lists as a source of names for jury duty does not result in an illegally constituted jury unless it is shown that the use of these lists resulted in exclusion of a cognizable group or class of citizens.

A group of persons who fail to register to vote has never been considered a cognizable group.

Defendant had not presented any evidence of any type of discrimination and he has the burden of proof:

"Defendant's argument that black people are systematically excluded from jury duty is without merit. A method of jury selection based on political subdivisions does not *per se* discriminate against blacks. The defendant, without evidence of the actual racial makeup on jury panels previous to the defendant's, fails to meet the necessary burden of proof. *Whitus v Georgia, supra* [385 US 545; 87 S Ct 643; 17 L Ed 2d 599 (1967)]; *People v Trice, supra* [22 Mich App 521 (1970)]." *People v Williams,* 29 Mich App 420, 424 (1971).

Jurors selected from voter registration lists or tax assessment rolls have been approved by this Court. *People v Williams, supra; Robson v Grand T W R Co,* 5 Mich App 90 (1966).

Since there has been no showing of discrimination, and the method used in Jackson County has been approved by this Court, this issue is without merit.

### III.

Whether prison administration acts and subsequent arrest, conviction and sentencing constitute cruel and unusual punishment for the same crime?

Defendant asserts that solitary confinement, denial of other usual rights prior to conviction for escape, loss of "good time", and the later sentencing for escape constitute cruel and unusual punishment.

The people answer that the administrative acts of the prison authorities, subsequent to arrest,

conviction, and sentencing of defendant are not cruel and unusual punishment.

This Court has not held upon the precise issue of whether the forfeiture of good time and a conviction of escaping from prison constitutes cruel and unusual punishment, however, it has noted MCLA 800.33; MSA 28.1403 provides for a disciplinary action which is an administrative proceeding and not a criminal proceeding. *Heyman v Kropp,* 24 Mich App 231 (1970); *People v Shastal,* 26 Mich App 347 (1970).

In *Shastal* the question of double jeopardy was raised. When deciding *Shastal,* this Court upheld the forfeiture since it was an administrative proceeding. The tenor of these cases is that a warden's disciplinary action, pursuant to the statute, and a conviction and sentencing pursuant to the escape statute is not cruel and unusual punishment. This Court has recognized the difference between a disciplinary action which results from a prisoner breaking one of the prison rules, and a conviction of a crime established by the Legislature to deter prison escapes *(In re Evans,* 352 Mich 185 [1958]).

The general rule regarding forfeiture of good time is stated in 72 CJS, Prisons. § 21, Forfeiture of Right, pp 890, 891, where it is said:

"The misconduct of a prisoner may result in the forfeiture, in whole or in part, of his right to a reduction of sentence for good conduct; and this forfeiture may be regulated by statute. * * *

"Statutory provisions control as to the official who has the authority to forfeit a prisoner's good-time allowance, and, under some statutory provisions, whether or not there shall be a forfeiture of a prisoner's good time is a matter within the discretion of the designated authorities, and the decision of an authorized board in this respect ordinarily should not be interfered with

unless it clearly appears that such board exceeded its powers or that substantial injustice has been done, although, in declaring a forfeiture, an official may not act in an arbitrary manner."

In the present case, the warden was merely acting pursuant to the statutory powers granted him in MCLA 800.33; MSA 28.1403 to discipline defendant for the infraction of a prison rule.

At the trial court proceedings, there was some testimony by defendant that he had been put in solitary confinement upon his return to prison, he had been given a booklet issued by the warden to returning escapees, and he was taken before a prison board for questioning. These proceedings do not show any cruel and unusual punishment inflicted by the prison administration. The defendant has failed to meet his burden of proof to show his constitutional rights have been infringed upon. The rule stated in *Johnson v Avery,* 382 F2d 353, 355 (CA 6, 1967), for a Federal court's review of Federal prison administrator's acts is applicable to this Court's review of a Michigan administrator's acts:

"The perspective through which we view this question, even though it seems one of first impression, must be framed by the well-established reluctance of the Federal Courts to intervene in internal affairs of state or Federal penal institutions. Regulations for the administration and discipline of prisons, promulgated and enforced by duly authorized officials, are not subject to review by the courts unless it can be clearly demonstrated that they interfere with fundamental rights guaranteed by the Constitution. *United States v Marchese,* 341 F2d 782 (9th Cir 1965) *cert den* 382 US 817; 86 S Ct 41; 15 L Ed 2d 64 (1965); *McCloskey v State of Maryland,* 337 F2d 72 (4th Cir 1964); *Kirby v Thomas,* 336 F2d 462 (6th Cir 1964); *Sostre v McGinnis,* 334 F2d 906 (2nd Cir 1964) *cert den* 379 US 892; 85 S Ct

168; 13 L Ed 2d 96 (1964); *Childs v Pegelow,* 321 F2d 487 (4th Cir 1963) *cert den* 376 US 932; 84 S Ct 702; 11 L Ed 2d 652 (1964); *Hatfield v Bailleaux,* 290 F2d 632 (9th Cir 1961) *cert den* 368 US 862; 82 S Ct 105; 7 L Ed 2d 59 (1961); *Siegel v Ragen,* 180 F2d 785 (7th Cir 1950) *cert den* 339 US 990; 70 S Ct 1015; 94 L Ed 1391 (1950)." Followed in *Vida v Cage,* 385 F2d 408 (CA6 1967) (Michigan case).

Defendant's third claim of error is without merit.

## IV

Whether the failure to hold an examination within the statutory period, required by MCLA 766.4; MSA 28.922, or show good cause on a record, required by MCLA 766.7; MSA 28.925, violated defendant's right to due process.

Defendant claims that since a preliminary examination was not held within the prescribed statutory mandates, defendant was prejudiced.

The people assert that a magistrate may, within his judicial discretion, adjourn, continue or delay an examination where there is due cause shown. Because circumstances vary widely from case to case, an abuse of discretion and subsequent prejudice must be proved.

MCLA 766.4; MSA 28.922[2] provides that an examination is to be held within a period not exceeding ten days. MCLA 766.7; MSA 28.925 does allow delays for "good cause".

The record is not clear as to why there was a delay of the examination between the scheduled dates of November 18, 1968, and the actual examination date of December 2, 1968. This 24-day delay, without any explanation as to why, is error.

---

[2] Amended by 1970 PA 213, § 1.

However, unless there is a showing of prejudice this error is not reason for reversing the conviction.

The defendant had only alleged prejudice, and has presented no evidence of prejudice. Also, in reviewing the record we have been unable to discover any prejudice which might have resulted from a delay in the preliminary examination. Therefore, while error was committed it was not reversible error as no prejudice resulted. *People v Linscott,* 14 Mich App 334 (1968); *People v Spalding,* 17 Mich App 73 (1969); *People v Grasty,* 21 Mich App 106 (1970); *People v Munn,* 25 Mich App 165 (1970).

## V.

Whether defense counsel was denied the right to examine records, from which a witness testified, at the preliminary examination?

At the preliminary examination a witness testified from records the defendant was not authorized to be absent from the Michigan Department of Corrections' property. When defense counsel asked for the records from which the witness was testifying, the trial judge denied this request. Defendant asserts that this was a denial of due process.

The people argue that defendant was not prejudiced in any way because defense counsel was not allowed to examine the entire records of the Jackson Prison at the examination. The witness testified from two items and defense counsel was allowed to look at both these items.

It is the recognized rule in Michigan that if a witness is testifying from records or documents defense counsel has the right to examine these records. *People v Lyons,* 49 Mich 78 (1882); *The*

*Cortland Manufacturing Co v Platt,* 83 Mich 419 (1890); *People v Schepps,* 217 Mich 406 (1922).

The preliminary examination record reveals the following pertinent colloquy:

*"Q. [By Mr. Rappleye, defense attorney]:* I notice you have the records and are going through them in your testimony.

*"A. [Henry Newcomb, Chief Record Clerk, Jackson State Prison]:* Yes.

*"Q.* May I see them.

*"Judge Baker:* This is limited to the records he used in his testimony.

*"Mr. Rappleye:* He has been going through the records in the direct examination. It isn't possible for me to know what records he has used. I am entitled to examine all the records.

*"Judge Baker:* Your motion is denied. You may see the records used by him in his testimony.

*"Mr. Rappleye:* I have no idea what he used.

*"Judge Baker:* Ask him for any matters he has testified to. He will go through the records for you, and if you want to see that record the court will permit that.

*"Mr. Rappleye:* He used all the records.

*"Judge Baker:* This contains more than any testimony he gave here. That entire record is custodial and the court will not permit you to examine all the records.

*"Mr. Rappleye:* On what basis.

*"Judge Baker:* Take the objection, I have ruled on it.

*"Mr. Rappleye:* Would you give me the records you have testified from.

*"Mr. Rappleye (continuing):*

*"Q.* You have given me exhibit #1 and another paper entitled escape or attempt to escape.

*"A.* True.

*"Q.* Is it your testimony that is all you have testified to or from here this morning.

*"A.* Yes.

*"Q.* All the information you have testified to came from these two pieces of paper.

*"A.* Yes."

It is clear from this colloquy defense counsel was given the record from which the witness testified for his examination. The fact defense counsel was not allowed to look at documents which were not used did not constitute error.

Since the trial court acted properly, there was no error.

## VI.

Whether defendant was penalized for exercising his constitutional right to trial?

Defendant claims that discrimination was exercised in Jackson County in sentencing one who proceeds to trial as he routinely received a minimum of 2 years, while one who pleaded guilty routinely received a minimum of 1-1/2 years.

The present case must be reviewed with *People v Snow,* 26 Mich App 510 (1970), in mind. In *Snow* the majority held the case had to be remanded because there was a showing by defense counsel of discrimination in sentencing between those defendants pleading guilty and those who exercised the right of trial by jury, with those who went to trial receiving a minimum of 2 years sentence and those who pleaded guilty to a 1-1/2 years minimum sentence.

When sentencing the defendant, in the present case, the trial judge stated:

*"The Court (continuing):* * * * as you know, I've had a pre-sentence report, and have the benefit of your past record, and so forth, and I've reviewed it, and I have taken that into consideration, as well as what I think would be best in your case in arriving at your sentence.

"And it's the sentence of the court that you be confined at the State Prison of Southern Michigan for a

minimum of two years and a maximum of five years, and this is to be a consecutive sentence, starting at the expiration of the term that you are now serving."

Ordinarily, the trial judge's statement would have been *prima facie* proof he was not in any way basing his sentence upon the fact defendant demanded a jury trial. However, the instant case must have been one of those pending at the time of the decision in *Snow*.

In the case of *People v Snow*, 386 Mich 586 (1972), the Supreme Court affirmed the majority opinion of the Court of Appeals, 5–2. It is stated in *Snow* in part as follows (pp 592, 593):

"In *Williams v New York*, 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949), certain basic considerations were found to be proper in determining an appropriate sentence: (a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.

\* \* \*

"The Judge's statements as to the reformation of defendant refer to an earlier offense, not the offense of escaping from prison for which defendant was being sentenced. There is nothing to indicate a need to protect society insofar as the escape episode is concerned. Why this particular wrongdoer should be disciplined by a two-year minimum is not made apparent. The deterrence of others from committing like offenses, if it was a factor, is not articulated."

If we interpret *Snow* correctly, this requires a remand to the trial court for a new sentencing with accompanying statements showing the basis for the trial court's sentence.

Affirmed and remanded for new sentencing.

BRONSON, J., concurred.

LEVIN, P. J. *(concurring).* I concur in Judge
HOLBROOK's opinion because, on the record pre-
sented, the issues raised on appeal have been
correctly decided in accordance with earlier case
law accurately elucidated in my colleague's careful
and comprehensive opinion.