PEOPLE v GRIMMETT

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.

The purpose behind the double jeopardy provision of the Fifth Amendment is that the state with all its resources and powers should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty (US Const, Am V).

2. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—STATES.

The double jeopardy provision of the Fifth Amendment is now applicable to the states through the Fourteenth Amendment and, in addition, a section of an article of the Michigan Constitution prevents a defendant from being placed in double jeopardy (US Const, Ams V, XIV; Const 1963, art 1, § 15).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 166, 185.

[3, 4] 21 Am Jur 2d, Criminal Law § 180.

[5] 56 Am Jur, Waiver § 2.

[6] 16 Am Jur 2d, Constitutional Law § 131 et seq.

[7] 21 Am Jur 2d, Criminal Law § 194.

Plea of former jeopardy where jury discharged because of misconduct or disqualification of one or more of their members, 38 ALR 706.

[8] 21 Am Jur 2d, Criminal Law § 195.

What constitutes accused's consent to court's discharge of jury or to grant of state's motion for mistrial which will constitute waiver of former jeopardy plea, 63 ALR2d 782.

[9] 21 Am Jur 2d, Criminal Law § 243.

[10, 12] 21 Am Jur 2d, Criminal Law § 253.

Waiver or loss of accused's right to speedy trial, 57 ALR2d 302.

[11, 13] 21 Am Jur 2d, Criminal Law § 245.

[14] 21 Am Jur 2d, Criminal Law § 342.

[15–18] 21 Am Jur 2d, Criminal Law § 569 et seq.

[19] 21 Am Jur 2d, Criminal Law § 303.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—RETRIAL—MANIFEST NECESSITY—MISTRIAL.

The constitutional provision forbidding double jeopardy does not prevent a retrial under any circumstances and two types of situations are recognized where a second trial is permitted; first, in those situations where "manifest necessity" requires it and, second, in those cases where the defendant consents to a mistrial (US Const, Am V; Const 1963, art 1, § 15).

4. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—MANIFEST NECESSITY—RETRIAL—JURY.

Examples of "manifest necessity" which require retrial, despite the constitutional provision forbidding double jeopardy, are failure of the jury to reach a verdict and misconduct of a member of the jury (US Const, Am V; Const 1963, art 1, § 15).

5. WORDS AND PHRASES—CONSENT.

Waiver is defined as an intentional relinquishment or abandonment of a known right or privilege.

6. CONSTITUTIONAL LAW—WAIVER—CONSENT.

Waiver of a constitutional right consists of two separate parts, a specific knowledge of the constitutional right and an intentional decision to abandon the protection of the constitutional right; both of these elements must be present and if either is missing there can be no waiver and no finding of consent.

7. CRIMINAL LAW—STATUTES—INDICTMENT AND INFORMATION—DISCHARGE OF JURY.

Statute which provides in part, that if any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, "the accused shall on his motion be entitled to a discharge of the jury" does not permit the trial judge on his own motion to discharge the jury; moreover, the statute provides that the discharge of the jury occurs after the amendment to the information (MCLA 767.76).

8. CRIMINAL LAW—RETRIAL—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—INDICTMENT AND INFORMATION.

Retrial of defendant did constitute placing defendant in double jeopardy where the trial judge discharged the jury sua sponte and without a waiver by defendant prior to allowing the prosecution to amend the information (US Const, Am V; Const 1963, art 1, § 15; MCLA 767.67).

9. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL—ARREST—
INDICTMENT AND INFORMATION.
   The right to a speedy trial is embodied in the Sixth Amendment
   to the United States Constitution and attaches to the period of
   time between an arrest and an indictment (US Const, Am VI).

10. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL.
   The Michigan rule which required that a defendant demand a
   speedy trial or waive his constitutional right is overruled.

11. CRIMINAL LAW—DELAY—PREJUDICE—PRESUMPTIONS.
   After a delay of 18 months in bringing a criminal defendant to
   trial, prejudice is presumed.

12. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL—WAIVER.
   Although failure to assert the right of speedy trial does not lead
   to an automatic waiver, it is one factor to consider in determin-
   ing whether defendant was denied this right.

13. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL.
   Defendant was not denied his right to a speedy trial where the
   delay was 19 months, there was no evidence that defendant
   was prejudiced by the delay, loss of evidence due to a delay
   could not and did not occur in the case, and defendant made no
   request for a trial.

14. CRIMINAL LAW—SENTENCES—PREVIOUS CONVICTIONS—PUBLIC REC-
ORDS—ADMISSIONS.
   A trial court has wide latitude in sentencing a defendant and
   may consider a defendant's previous convictions, public records
   concerning the defendant, or even defendant's admissions to
   the court.

15. CRIMINAL LAW—RESENTENCING.
   Case should be remanded to the trial court for resentencing
   where the trial judge acted improperly in assuming defendant
   was guilty of a murder charge, which had not yet come to trial,
   when he sentenced defendant on a conviction of assault with
   intent to commit murder.

DISSENTING OPINION

T. E. BRENNAN, J.

16. CRIMINAL LAW—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.
   *Trial court's dismissal of a murder charge was improper, as not
   having been made upon motion of the defendant, and having*

been in jeopardy in the first murder trial, defendant was entitled to dismissal of the second murder charge involving the same victim.

17. CRIMINAL LAW—SENTENCES—DISCRETION.

Trial court did not abuse its discretion in considering a killing for which the defendant was accused when it sentenced defendant for assault with intent to commit murder.

18. CRIMINAL LAW—SENTENCES.

It is unthinkable that a trial judge, faced with the solemn duty of pronouncing judgment of sentence upon a defendant should close his eyes to any information about the defendant, his antecedents, his activities, or his proclivities.

19. CRIMINAL LAW—SENTENCES—PUBLIC RECORDS—PRIOR CONVICTIONS—PRE-SENTENCE REPORTS.

The process of fact-finding on sentencing is essentially informal and administrative and the sentencing court must make a determination, which is in the best interests of society and the defendant, in the light of all of the facts it is able to gather and digest; that a sentencing court may not delve beyond public records, previous convictions and open-court admissions would destroy the pre-sentence report as a tool of the administration of criminal justice and would prevent a defendant from explaining or mitigating a previous conviction, and it would require the people to prosecute to ultimate conviction every known offense against a defendant, even where he stands convicted of one offense, the criminal liability attaching to which is adequate to afford full opportunity for correction and rehabilitation.

Appeal from Court of Appeals, Division 1, V. J. Brennan, P. J., and J. H. Gillis and Jeannette, JJ., and R. B. Burns, P. J., and Levin and Churchill, JJ., affirming Recorder's Court of Detroit, George W. Crockett, Jr., and Robert J. Colombo, JJ. Submitted April 4, 1972. (No. 3 April Term 1972, Docket Nos. 53,256-1/2, 53,288). Decided November 29, 1972.

27 Mich App 509 affirmed in part.

29 Mich App 609 reversed.

George Grimmett was convicted of assault with intent to commit murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed as to conviction and remanded for resentencing.

George Grimmett was convicted of manslaughter. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Daniel S. Seikaly,* Assistant Defender), for defendant on appeal.

Swainson, J. On December 22, 1966, three men held up a small grocery store in the City of Detroit. During the course of the robbery, the owner, Shaker Aubrey, was killed, and a customer, John Kubon, was wounded by a bullet which struck him in the back. Defendant Grimmett was arrested on December 26, 1966, and on December 27, 1966, was charged with the murder of Mr. Aubrey.

A jury trial commenced on January 22, 1968, in Recorder's Court for the City of Detroit. On January 24, 1968, defendant's counsel informed the court that defendant wished to plead guilty to second-degree murder, and that it was his opinion that the information charged murder in the second degree. The prosecutor disagreed with defense

counsel's assertion and contended that the information charged first-degree murder.[1] In his opening statement to the jury, the prosecutor stated that he intended to prove the crime was premeditated.

The trial court allowed the prosecutor to amend the information to charge first-degree murder by adding the words "and with premeditation." Defendant's objection to this amendment was overruled. The trial court, believing that MCLA 767.76; MSA 28.1016,[2] required the dismissal of the jury when an information was amended, discharged the jury.

A new trial on the first-degree murder charge was commenced on September 29, 1969. On October 4, 1969, a jury found defendant guilty of

[1] The information read:

"In the Name of the People of the State of Michigan, WILLIAM L. CAHALAN, Prosecuting Attorney in and for the said County of Wayne, who prosecutes for and on behalf of the People of said State in said Court, comes now here in said Court in the MARCH term thereof, A.D. 1967, and gives the said Court to understand and be informed that

GEORGE GRIMMETT
HAROLD JOHNSON
CARLETON BROWN

late of the said City of Detroit, in said County, heretofore, to-wit, on the 22nd day of December, A.D. 1966, at the said City of Detroit, in the County aforesaid feloniously, wilfully and of their malice aforethought, did kill and murder one Shaker Aubrey; contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the People of the State of Michigan.
"Note—See Sec. 750.316 C.L. 1948

/s/ William L. Cahalan
Prosecuting Attorney"

[2] MCLA 767.76; MSA 28.1016, reads in part:

"If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury."

manslaughter. He was sentenced to 14 years, 11 months to 15 years, with no recommendation.

On August 1, 1968, defendant was arraigned on the charge of assault with intent to commit murder resulting from the wounding of the customer, John Kubon. This was after the jury in the first trial on the murder charge had been discharged and prior to the commencement of the second trial on that charge. On December 17, 1968, defendant's trial on this second charge began before another jury in recorder's court. On December 20, 1968, defendant was found guilty of assault with intent to commit murder and was sentenced to life imprisonment. The Court of Appeals affirmed the conviction on the charge of assault with intent to commit murder. 27 Mich App 509. A separate panel of the Court of Appeals affirmed defendant Grimmett's conviction of manslaughter. 29 Mich App 609. We granted leave to appeal in both cases. 384 Mich 833.

Defendant raises, and the prosecution accepts, five issues on appeal, four of which are listed below:

1. Whether the dismissal of the jury in the first trial was by the court sua sponte and not justified by "manifest necessity," or whether the dismissal of the jury was with the consent of the defendant?

2. Whether defendant was deprived of his right to a speedy trial where he was arrested and placed in custody on December 26, 1966, and a warrant and complaint did not issue until July 30, 1968?

3. Whether defendant was unconstitutionally placed in jeopardy twice by the multiple prosecutions launched against him arising out of the same criminal episode?

4. Whether it was improper for the trial judge at the assault sentencing to consider in the determi-

nation of punishment a factor, which at that time constituted an arrest for a crime for which defendant had not been convicted nor was subsequently convicted?

Defendant contends that the double jeopardy provisions of the Fifth Amendment should have prohibited his second trial after the judge dismissed the jury in the first trial. The purpose behind the double jeopardy provision of the Fifth Amendment[3] was stated by the United States Supreme Court in *Green v United States*, 355 US 184, 187–188; 78 S Ct 221; 2 L Ed 2d 199 (1957), as follows:

"[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

The double jeopardy provision of the Fifth Amendment is now applicable to the states through the Fourteenth Amendment. *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). In addition, the Michigan Constitution 1963, art 1, § 15,[4] prevents a defendant from being placed in double jeopardy.

---

[3] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

[4] "No person shall be subject for the same offense to be twice put in jeopardy. All persons shall, before conviction, be bailable by sufficient sureties, except for murder and treason when the proof is evident or the presumption great."

The provision forbidding double jeopardy does not prevent a retrial under any circumstances. Two types of situations are recognized where a second trial is permitted. First, in those situations where "manifest necessity"[5] requires it and, second, in those cases where the defendant consents to a mistrial.

It is difficult to precisely define what constitutes "manifest necessity". Examples include the failure of the jury to reach a verdict, *United States v Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824), and misconduct of a member of the jury, *In re Ascher,* 130 Mich 540 (1902). However, in the present case, the prosecutor does not contend that there was "manifest necessity" for the dismissal of the jury. The prosecutor contends there is no double jeopardy because defendant requested and consented to a new jury.

Waiver is defined in *Johnson v Zerbst,* 304 US 458, 464; 58 S Ct 1019; 82 L Ed 1461 (1938), as "an intentional relinquishment or abandonment of a known right or privilege." The Court added, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and * * * we 'do not presume acquiescence in the loss of fundamental rights.' " Thus, waiver consists of two separate parts: 1) a specific knowledge of the constitutional right; and 2) an intentional decision to abandon the protection of the constitutional right. Both of these elements must be present and if either is missing there can be no waiver and no finding of consent.

The difficulty arose in this case because the trial

[5] The exception to the double jeopardy provision of the Constitution for cases where "manifest necessity" requires it was recognized by the United States Supreme Court in *United States v Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824).

judge felt bound by MCLA 767.76; MSA 28.1016, to discharge the jury. This statute reads:

"No indictment shall be quashed, set aside or dismissed or motion to quash be sustained or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury. In case a jury shall be discharged from further consideration of a case under this section, the accused shall not be deemed to have been in jeopardy. No action of the court in refusing a continuance or postponement under this section shall be reviewable except after motion to and refusal by the trial court to grant a new trial therefor and no writ of error or other appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the reviewing court shall find that the accused was prejudiced in his defense or that a failure of justice resulted."

It is clear that the trial court was incorrect in its interpretation of the law. The statute provides: "the accused shall on his motion be entitled to a

discharge of the jury". The statute does not permit the trial judge on his own motion to discharge the jury. Moreover, the statute provides that the discharge of the jury occurs after the amendment to the information. In this case, the trial court dismissed the jury before the amendment was made.

It is apparent from a reading of the colloquy between court and counsel that defendant's counsel also misunderstood MCLA 767.67; MSA 28.1016:

> "*Mr. Sherman [Defendant's counsel]:* I am not arguing the constitutionality of the Michigan statutes. I call your attention to this. But, Your Honor, as to whether or not they have the right to amend—
>
> "*The Court (Interposing):* You can argue the constitutionality of the Michigan statute. I think the Michigan statute is safe from constitutional defect by the requirement—
>
> "*Mr. Sherman (Interposing):* Yes, that's right, Your Honor.
>
> "*The Court (Continuing):* —that I discharge the Jury and give you an opportunity to meet the amendment to the indictment and have another trial.
>
> "*Mr. Sherman: That's right.* * * * I agree with Your Honor that the Michigan statutes—*where we raise the question and they want to amend to substance, we have got to have a new jury.*" (Emphasis added.)

The prosecutor contends that defense counsel by his actions did in fact make a motion for discharge of the jury and, thus, defendant did consent to such discharge and jeopardy does not attach. The prosecutor relies on the fact that the trial judge, at the end of his colloquy with the two attorneys, stated:

> "The information does not charge premeditation and therefore it is not first-degree murder in Michigan.

"I grant the defense motion.

"If you want to amend I will give you leave to amend."

It is clear that the only motion the trial court was dealing with was defendant's motion that the information charged second-degree murder and not first-degree murder. Defendant never made any formal motion to discharge the jury. The prosecutor contends that although there was no formal motion, there was an informal motion which allowed defendant to waive this right. However, in view of the fact that defendant's attorney was mistaken in his view of the law, it is obvious that defendant could not consciously waive the right to object to the discharge of the jury. A close reading of the record reveals that defendant's counsel made no motion of any type to discharge the jury, and that the motion to discharge was made by the trial court sua sponte. No waiver can be inferred from the actions of defendant's counsel. The retrial of defendant under the circumstances of this case did constitute placing defendant in double jeopardy and the judgment of the Court of Appeals must be reversed.[6]

Defendant contends that his right to a speedy trial was violated by the 19-month delay between his arrest and his indictment on the charge of assault with intent to commit murder. The right to a speedy trial is embodied in the Sixth Amend-

---

[6] Defendant's codefendant, Carleton Brown (also known as Carlton Brown), was present at the first trial with defendant. He appealed to the Court of Appeals, which held that he would be put in jeopardy twice if a retrial were allowed to proceed. *People v Carlton Brown*, 23 Mich App 528 (1970). We believe the Court of Appeals in the *Brown* case correctly analyzed the situation and that the reasoning of the Court of Appeals in *Brown* should be applied to the defendant in this case.

ment to the United States Constitution.[7] This right attaches to the period of time between an arrest and an indictment. *United States v Kaufman,* 311 F2d 695 (CA 2, 1963); *Hardy v United States,* 119 US App DC 364; 343 F2d 233 (1964).

The Court of Appeals in dealing with this issue stated (27 Mich App 509, 515):

"Under these circumstances was there a right, in addition to the right to a speedy trial in both prosecutions, to speedy commencement of prosecutions? The people take the negative position, asserting that the defendant's only right concerning the timing of the commencement of the prosecution is set forth by the applicable statute of limitations. The necessary preparation for each trial would have been virtually the same and defendant demonstrates no prejudice in having a fair trial by reason of the delay. The original prosecution was still pending and he did not move for a joint trial of both prosecutions. The second prosecution was completed before the first. We hold that there was no violation of his constitutional or statutory rights to speedy trial nor was there a failure of due process. 21 Am Jur 2d, Criminal Law, § 248, p 283."

The United States Supreme Court has recently handed down a decision that authoritatively settles many of the problems in this area. In *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the Court delivered a decision dealing with the right to a speedy trial. Mr. Justice Powell, speaking for a unanimous Court, stated that the rule followed in Michigan and some other states,

---

[7] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

which requires a defendant to make a demand or else he is presumed to waive his right to a speedy trial, is inconsistent with Federal constitutional requirements. The Court stated:

"Such an approach, by presuming waiver of a fundamental right from inaction, is inconsistent with this Court's pronouncements on waiver of constitutional rights. The Court has defined waiver as 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v Zerbst,* 304 U.S. 458, 464 [58 S Ct 1019; 82 L Ed 1461] (1938). Courts should 'indulge every reasonable presumption against waiver,' *Aetna Ins. Co. v Kennedy,* 301 U.S. 389, 393 [57 S Ct 809; 81 L Ed 1177] (1937), and they should 'not presume acquiescence in the loss of fundamental rights,' *Ohio Bell Tel. Co. v Public Utilities Comm'n,* 301 U.S. 292, 307 [57 S Ct 724; 81 L Ed 1093] (1937). In *Carnley v Cochran,* 369 U.S. 506 [82 S Ct 884; 8 L Ed 2d 70] (1962), we held:

" 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel, but intelligently and understandably rejected the offer. Anything less is not waiver.' *Id.,* at 516.

The Court has ruled similarly with respect to waiver of other rights designed to protect the accused. See, *e.g., Miranda v Arizona,* 384 U.S. 436, 475–476 [86 S Ct 1602; 16 L Ed 2d 694] (1966); *Boykin v Alabama,* 395 U.S. 238 [89 S Ct 1709; 23 L Ed 2d 274] (1969).

"In excepting the right to speedy trial from the rule of waiver we have applied to other fundamental rights, courts that have applied the demand-waiver rule have relied on the assumption that delay usually works for the benefit of the accused and on the absence of any readily ascertainable time in the criminal process for a defendant to be given the choice of exercising or waiving his right. But it is not necessarily true that delay benefits the defendant. There are cases in which delay appreciably harms the defendant's ability to defend himself. Moreover, a defendant confined to jail prior to trial is obviously disadvantaged by delay as is a defend-

ant released on bail but unable to lead a normal life because of community suspicion and his own anxiety.

"The nature of the speedy-trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing swift prosecutions, and society's representatives are the ones who should protect that interest.

"It is also noteworthy that such a rigid view of the demand rule places defense counsel in an awkward position. Unless he demands a trial early and often, he is in danger of frustrating his client's right. If counsel is willing to tolerate some delay because he finds it reasonable and helpful in preparing his own case, he may be unable to obtain a speedy trial for his client at the end of that time. Since under the demand-waiver rule no time runs until the demand is made, the government will have whatever time is otherwise reasonable to bring the defendant to trial after a demand has been made. Thus, if the first demand is made three months after arrest in a jurisdiction which prescribes a six months rule, the prosecution will have a total of nine months—which may be wholly unreasonable under the circumstances. The result in practice is likely to be either an automatic, *pro forma* demand made immediately after appointment of counsel or delays which, but for the demand-waiver rule, would not be tolerated. Such a result is not consistent with the interests of defendants, society, or the Constitution.

"We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the

demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection.

"In ruling that a defendant has some responsibility to assert a speedy-trial claim, we do not depart from our holdings in other cases concerning the waiver of fundamental rights, in which we have placed the entire responsibility on the prosecution to show that the claimed waiver was knowingly and voluntarily made. Such cases have involved rights which must be exercised or waived at a specific time or under clearly identifiable circumstances, such as the rights to plead not guilty, to demand a jury trial, to exercise the privilege against self-incrimination, and to have the assistance of counsel. We have shown above that the right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived. But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside."[8]

The Court further held that in determining whether the right to a speedy trial has been violated, a balancing test should be used which should take into account four factors:

---

[8] Thus, the Michigan rule laid down in *People v Foster,* 261 Mich 247 (1933), which required that a defendant demand a speedy trial or waive his constitutional right, is overruled.

"Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

In this case there clearly was a very long delay which the state had the heavy burden of justifying. Our Court has followed the rule that after a delay of 18 months, prejudice is presumed. *People v Den Uyl,* 320 Mich 477 (1948). Moreover, the United States Supreme Court in *Barker, supra,* recognized that the prejudice to the defendant often could not be quantified, and, thus, must to some extent be presumed. The Court stated:

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. *Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."* (Emphasis added.)

We believe that upon considering all of these factors, defendant was not denied his right to a speedy trial. In *Barker v Wingo, supra,* the delay was over 5 years; here it was 19 months. Moreover, there is no evidence that defendant was prejudiced by the delay. While it is difficult to measure prejudice in these circumstances, defendant has failed to point out any type of prejudice that did

occur. The fact situation in the two trials were identical. Therefore, the defense in both trials was based on substantially the same facts. Loss of evidence due to a delay could not and did not occur in this case.

Defendant made no request for a trial on the assault charge. Although failure to assert this right does not lead to an automatic waiver, it is one factor to consider in determining whether defendant was denied this right. We hold that viewing all of the facts, defendant was not denied his right to a speedy trial.

Defendant further contends that we should prohibit multiple prosecutions arising out of the same factual situation. Defendant properly points out that in some cases multiple prosecutions are prejudicial to a defendant. In some cases multiple prosecutions may aid a defendant. Therefore, we believe a mandatory rule would be an unwise solution to this problem. Moreover, we believe that the type of rule proposed by the defendant, such as is found in the Model Penal Code,[9] is properly a decision for the Legislature and not for this Court.

At the sentencing of defendant on the assault charge, the trial court stated:

"And while he was tried for the shooting of Mr.

---

[9] Section 1.07 of the Model Penal Code (Proposed Official Draft, 1962, p 12) reads in part:

"(2) *Limitation on Separate Trials for Multiple Offenses.* Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

"(3) *Authority of Court to Order Separate Trials.* When a defendant is charged with two or more offenses based on the same conduct or arising from the same criminal episode, the Court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires."

Kubon, he is certainly the same person who murdered the other grocer, Mr. Shaker Aubrey at the same time."

We believe this was improper. The trial court, of course, has wide latitude in sentencing a defendant. The court may consider a defendant's previous convictions, public records concerning the defendant, or even defendant's admissions to the court. *People v Losinger,* 331 Mich 490 (1951); *cert den* 343 US 911; 72 S Ct 644; 96 L Ed 1327 (1952). However, here the trial judge went even further and made an independent finding of defendant's guilt on the murder charge. This was for the jury at the murder trial to decide. At the time of the sentencing on the assault charge, defendant had not been found guilty on the murder charge. He had technically been arrested but not convicted on the murder charge. We believe the trial judge acted improperly in assuming defendant was guilty of the murder charge when he sentenced defendant on the assault charge. We, therefore, remand the case to the trial court for resentencing on the assault charge. See *People v Baum,* 251 Mich 187 (1930); *People v Mellor,* 302 Mich 537 (1942); *People v Earegood,* 383 Mich 82 (1970).

The Court of Appeals is reversed as to defendant's conviction for manslaughter (29 Mich App 609). The Court of Appeals is affirmed as to defendant's conviction of assault with intent to commit murder (27 Mich App 509), and the cause is remanded for resentencing of defendant in accordance with this opinion.

T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

T. E. BRENNAN, J. *(dissenting).* I agree that the

trial court's dismissal of the Aubrey murder charge was improper, as not having been made upon motion of the defendant. It is perhaps a technicality—but it is a crucial one. Having been in jeopardy in the *first Aubrey* murder trial, the defendant was entitled to dismissal of the second Aubrey murder charge.

I cannot agree, however, that the trial court abused its discretion in considering the Aubrey killing when it sentenced the defendant upon the Kubon assault. Indeed, our holding today forecloses for all time—because of a procedural flaw— the possibility that Mr. Aubrey's killer will be brought to justice for the killing of Mr. Aubrey.

It is unthinkable that a trial judge, faced with the solemn duty of pronouncing judgment of sentence upon a defendant should close his eyes to any information about the defendant, his antecedents, his activities, or his proclivities.

If, in considering sentence, a trial judge is properly apprised of the fact that a convicted defendant was habitually truant as a youth, or came from a broken home, or had difficulty keeping a job, or exhibited a surly and uncooperative attitude during his probation interview, or was known or believed to be addicted to drugs or alcohol—if all of this information is to be weighed by the judge—how can he be commanded to ignore the claim that the defendant shot and killed a man during a grocery store robbery?

The process of fact-finding on sentencing is essentially informal and administrative. The sentencing court must make a determination, which is in the best interests of society and the defendant, in the light of all of the facts it is able to gather and digest.

The suggestion that a sentencing court may not

delve beyond public records, previous convictions and open-court admissions, is a pernicious departure from our established practice. It would destroy the pre-sentence report as a tool of the administration of criminal justice. It would prevent a defendant from explaining or mitigating a previous conviction, and it would require the people to prosecute to ultimate conviction every known offense against a defendant, even where he stands convicted of one offense, the criminal liability attaching to which is adequate to afford full opportunity for correction and rehabilitation.

I would affirm as to the Kubon assault conviction and sentence.

BLACK, J., did not sit in this case.