PEOPLE v NIETO
PEOPLE v HATTEN
PEOPLE v MALONEY

1. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL.

   The four factors for consideration in determining an issue on the right of speedy trial are: length of delay, reason for the delay, defendant's assertion of the right, and prejudice to the defendant.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—SPEEDY TRIAL.

   Defendants were not denied their right to a speedy trial where the delay was 34 months; the first delay was for lack of the preliminary examination transcript which could have been waived if defendants were truly concerned about a speedy trial; no action was brought by defendants to obtain an earlier decision, when the court took almost a year in deciding defendants' motions to quash the information; defendants were free on bond; and the first assertion of the claimed denial of right to speedy trial was on the day trial began.

3. CRIMINAL LAW—RES GESTAE WITNESSES—NONPRODUCTION.

   The prosecution's nonproduction of two res gestae witnesses on the basis that one was in the Marine Corps and out of the state at an unknown address and another was stationed in Germany with the Army was not a sufficient showing to the trial court to justify the nonproduction of these two witnesses and the failure to produce them or to make a sufficient showing for their nonproduction constituted reversible error.

4. CRIMINAL LAW—PRELIMINARY EXAMINATION—BINDING OVER—MAGISTRATE'S BELIEF.

   The test for binding over an accused for trial after a preliminary

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 241, 242, 245–248.

[3] 29 Am Jur 2d, Evidence §§ 180–187.

Presumption or inference from party's failure to produce witnesses within his control, as affected by his introduction of some evidence on the matter in question. 135 ALR 1375.

[4] 21 Am Jur 2d, Criminal Law §§ 443, 447, 449, 450.

> examination is "probable cause to believe", and the belief referred to is the belief of the magistrate.

Appeals from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 June 18, 1973, at Detroit. (Docket Nos. 12636, 12654, 14466.) Decided August 27, 1973.

Norman Nieto, Jessie Hatten, and Gerard Maloney were convicted of manslaughter. Defendants appeal. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant Nieto.

*Harold E. Bledsoe,* for defendant Hatten on appeal.

*William J. MacQueen,* for defendant Maloney on appeal.

Before: QUINN, P. J., and J. H. GILLIS and BASHARA, JJ.

QUINN, P. J. A jury convicted defendants, and one other not involved in these appeals, of manslaughter, MCLA 750.321; MSA 28.553. They were sentenced and they appeal.

All defendants contend that their right to speedy trial was violated. Defendants Nieto and

Maloney assert reversible error because two res gestae witnesses were not produced and also because of inflammatory remarks by the prosecuting attorney in closing argument. Defendant Maloney also contends that insufficient evidence was established at the preliminary examination to establish probable cause that he was involved in the crime.

Defendants and Gary La Palm were among the persons present at a school dance in Detroit September 27, 1968. La Palm and one other person were suspected of having taken some coats from the dance. A group of people, including the defendants, set out to find La Palm and recover the coats. The group finally found La Palm on the playground of the Ruddiman School and chased him across the playground. After La Palm slipped and fell, a scuffle broke out between La Palm and several members of the group; La Palm was severely assaulted, severely injured as a result of the assault and died less than two days later as a result of the injuries received in the assault.

October 3, 1968, complaint was made and warrants were issued against defendants. They were arraigned the same day. October 8, 1968, preliminary examination was held with defendants and their counsel present. Each defendant was bound over on a charge of murder in the second degree and all defendants were released on bond.

Arraignment occurred November 12, 1968 and the bonds were continued. A pretrial conference was held December 12, 1968 and a trial date of April 1, 1969 was set and confirmed by trial notices sent March 13, 1969. Trial was postponed indefinitely because the preliminary examination transcript was not prepared and defendants did not waive the filing of the transcript. The transcript was filed August 7, 1969.

September 4, 1969 trial notices for September 29, 1969 were sent and between September 8 and September 18, 1969, all defendants moved to quash the informations and noticed the motions for hearing September 19, 1969. Hearing on the motions was adjourned to October 20, 1969, when they were argued. Decision on the motions was taken under advisement until November 20, 1969, but no decision was made until September 23, 1970, when the motions were denied by written opinion. A pretrial conference was then noticed for September 26, 1970. February 11, 1971, the attorney for the defendant not involved in these appeals was permitted to withdraw and a new attorney was appointed. June 24, 1971, trial notices were again sent for a trial August 9, 1971. July 9, 1971, Maloney's attorney withdrew and new counsel was substituted. Trial commenced August 9, 1971.

In *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), our Supreme Court adopted the balancing test announced in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), as the method for determining speedy trial issues. The test lists four factors for consideration: length of delay, reason for the delay, defendant's assertion of the right and prejudice to the defendant.

Delay here was approximately 34 months. Standing alone a delay of this length would probably be a denial of a speedy trial. However, the first delay was for lack of the preliminary examination transcript, which could have been waived if defendants were truly concerned about a speedy trial. Motions to quash were filed soon after the preliminary examination transcript was filed. The only plausible explanation for almost a year's delay in deciding these motions is some indication that the court files were lost. However, we note no

action by defendants to obtain an earlier decision; they were free on bond.

The first assertion of the claimed denial of right to speedy trial was on the day trial began. The only prejudice to the defendants from the delay that is disclosed by this record is the failure to produce two res gestae witnesses, an issue dealt with in the next paragraph. We are aware of the statement in *People v Collins,* 388 Mich 680, 695; 202 NW2d 769, 776 (1972) that, "prejudice would be presumed after 18 months", but in the context of that decision, it is dictum. On the basis of the balancing test announced in *Grimmett, supra,* defendants were not denied a speedy trial.

The res gestae witnesses not produced were Yerka and Flansburg. On the basis that Yerka was in the Marine Corps and out of the State of Michigan at an unknown address and that Flansburg was stationed in Germany with the U.S. Army, the trial court excused their production. This was not a sufficient showing to justify the nonproduction of these two res gestae witnesses and the failure to produce them or to make a sufficient showing for their nonproduction constitutes reversible error, *People v Tees,* 386 Mich 483; 192 NW2d 241 (1971).

No objection was made at trial to the alleged inflammatory remarks of the prosecuting attorney nor was any type of instruction requested with respect to these remarks. The issue was not saved for review. The manifest injustice required for review of questions not preserved does not appear on this record.

Finally, the preliminary examination record with respect to the probable cause question raised by defendant Maloney would never pass the "beyond a reasonable doubt test" required for convic-

tion, but such is not the test for binding over after preliminary examination. The test is "probable cause to believe", and the belief referred to is the belief of the magistrate. From the facts that Maloney was in the group that went looking for decedent, pursued him across the park and with some indication of Maloney's participation in the assault, we cannot say that the magistrate had no probable cause to bind over.

Reversed and remanded for new trial.

All concurred.