# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW FARLEY, JR.,

        Defendant-Appellant.

UNPUBLISHED
October 31, 2017

No. 331302
Genesee Circuit Court
LC No. 15-037130-FC

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent and would remand for resentencing.

Defendant was charged with open murder, MCL 750.316, and the jury was instructed on first-degree premeditated murder,[1] second-degree murder,[2] and voluntary manslaughter.[3] The jury acquitted him of first-degree murder and convicted him of second-degree murder. Defendant does not challenge his conviction but does appeal from the sentence imposed. The sentencing guidelines, as scored by the court, recommended a minimum sentence within the range of 162 to 270 months. The trial court imposed a minimum term of 600 months, a more than 100% increase from the top of the guideline range and a minimum sentence 27 ½ years longer than the longest term recommended within the relevant guideline grid. The trial court explained its departure as resting on its conclusion, contrary to that of the jury, that defendant was guilty of first-degree premeditated murder. Because MCL 777.36(2)(a) specifically bars the court from making a finding at sentencing that defendant's homicidal intent was of a level other than that found by the jury, I would reverse and remand for resentencing.

---

[1] MCL 750.316.

[2] MCL 750.317.

[3] MCL 750.321.

-1-

# I. FACTS

On October 26, 2014, defendant killed his wife by striking her in the head with a household flashlight and then stabbing her. He admitted doing so in statements to the police and in testimony. His defense at trial, based primarily on his own testimony, was that his actions occurred during a highly emotional state caused by adequate provocation, and so constituted voluntary manslaughter rather than murder. It is uncontested that the couple had marital difficulties, and that the victim had had a sexual relationship with a co-worker. The co-worker testified that the affair was brief. Defendant however testified that his wife had agreed to end the affair, but then resumed it on at least two occasions. He testified that immediately before he struck her, the victim made several statements that sent him into a rage, namely that he "disgusted her," that he was "not a man," that he could not have a baby with her,[4] and that she no longer wanted to be with him. According to defendant, his wife also said that she was going to get the co-worker with whom she had an affair, bring him back to the house, have sex with him in front of defendant, and have his baby.

The crime was discovered by the victim's friend, who became concerned when the victim stopped returning text messages. After several hours, the friend went to the couple's home to see if everything was alright. When she opened the door, she smelled gas. She called out but received no response. She went home and told her husband what had happened, and the two of them returned to the house. Despite the strong smell of gas, they entered the home and discovered the victim's body in the bedroom. They called 911 at 8:22 p.m. The police arrived within a few minutes and found defendant in the house in a non-responsive state due to the gas exposure. Defendant waived his Miranda rights and was questioned by the police. He immediately confessed to killing his wife and stated that having done so, he decided to kill himself. As a means to do so, he disconnected the gas hose from the hot water heater and started a fire in the fireplace, believing that it would cause the house to explode. He also took a number of prescription opiate pills.

The prosecution argued that defendant was guilty of first-degree murder on either of two theories. First, that he had in fact plotted the killing over some time, and that his testimony about losing control because of what his wife had said was simply invented. Second, that even if striking his wife with the flashlight occurred in a provoked moment of rage, defendant still premeditated the killing in the time it took to walk to the kitchen, get a knife, and return. The defense argued that defendant was guilty only of voluntary manslaughter because he was adequately provoked and acted in the heat of the moment. The jury, by convicting defendant of second-degree murder, concluded that defendant was able to form a malicious intent, but that he had not premeditated the killing.

Defendant's sentencing guidelines prior record variable score was zero since his only prior record was for misdemeanor convictions for driving on a suspended license. The probation officer, who prepared defendant's presentence investigation report (PSIR), recommended OV scores that totaled 95 points, placing defendant in guideline grid A-II, which carried a

---

[4] Defendant had had a vasectomy after fathering three children in his first marriage.

recommended minimum term of 140 months to 240 months. The trial court concluded that OV 10 should also be scored, raising the OV total to 105 points. Defendant was therefore sentenced based on guideline grid A-III,[5] which defines a minimum sentence range of between 162 months and 270 months.[6]

## II. LAW AND ANALYSIS

In sentencing defendant to a term of 50 years to 70 years and 10 months, the trial court imposed a minimum sentence 27½ years longer than the upper limit of the guidelines, an upward departure of more than 100%.[7] During the sentencing hearing, the trial judge repeatedly emphasized that he disagreed with the jury's verdict and that he believed the evidence demonstrated that defendant was guilty of premeditated first-degree murder.

> *When I listen to the testimony at the trial it was clear to me from the, ah, journal that was introduced as well as other testimony that you had been plotting her death for some time.* . . . What the evidence showed to the Court was that you had cat -- had categorized through a diary that you were gonna do to you [sic]. *You made up your mind long before you killed her that you were gonna kill her*; and probably take your own life in the process. Um, you stated in your diary the method in which you were gonna go about killing her; ah, you stated the reasons why you were gonna kill her. And most of these reasons had to do it appeared to this Court with your pride; your pride was hurt because, ah, possibly she may have found involvement with another man. . . . *And so you continued with your plan to, ah, to cause her death.*
>
> \* \* \*
>
> So the evidence showed to me a very cold, self centered, um, prideful individual who *had made up his mind he was gonna kill his wife* and use his writings to cover it up, and hopefully come out with a result that would be substantially less than what he deserved. Ah, you were seeking Manslaughter in this case; the Jury compromised, its Second Degree Murder. I agree with [the prosecutor]; *I think [the prosecutor] clearly, ah, presented a case of First Degree Murder in this case. There is no question in this Court's mind from the evidence that this was a premeditated and deliberate act on your part. You had*

---

[5] Unlike most guideline sentencing grids, the grid for second-degree murder contains only three OV levels. A defendant is in OV level III if the OV score is 100 points or above. Therefore, the scoring of OV 10 raised defendant's sentencing grid from A-II to A-III. Defendant does not challenge that scoring on appeal.

[6] The probation agent did not make a recommendation as to length of sentence. The victim's father requested a minimum term of 35 years.

[7] It appears that the trial court deviated from the 2/3's rule defined in *People v Tanner* 387 Mich 683; 199 NW2d 202 (1972), though only very slightly and the issue has not been raised.

*premeditated and deliberated, you had planned and schemed, and you had put your plan into action.* And that plan not only involved you killing your wife, but also killing yourself; you were going to kill yourself, but it didn't work out that way and so here you stand today before the Court.[8]

When I look at the guidelines, and they don't apply they're advisory, ah because of <u>People</u> versus <u>Lockridge</u>. . . . But the Court thinks not only does it have the right to exceed the guidelines in this case because of your offense score, but *the Court has the right to exceed the guidelines because it is clear to this Court that you had plotted and planned the murder of, ah, [the victim].* [Emphasis added.]

This murder was a heinous crime, but the trial court did not conform to the law in imposing this sentence. The judge based his more than quarter-century departure from the guidelines on his conclusion that defendant had premeditated the murder, a factor which he erroneously concluded was not taken into account in the guidelines, and which essentially nullified the jury's verdict which the judge dismissed as the result of "jury compromise[].".[9]

## A. Premeditation as Grounds for Departure

As a general rule, a trial court may make factual findings for purposes of sentencing that are inconsistent with the verdict. For example, a trial judge may score OV 1 and OV 2 for use of a weapon despite the fact that the jury convicted of unarmed robbery rather than armed. See *People v Harverson*, 291 Mich App 171; 804 NW2d 757 (2010). However, the legislature adopted a specific statute regarding the issue of homicidal intent barring the trial court from sentencing on its findings of intent rather that the jury's.

Offense Variable 6 is scored based upon the "offender's intent to kill or injure another individual" and can be scored at descending severity for premeditation, unpremeditated intent, or the mental state underlying an act of manslaughter. MCL 777.36. This OV is scored only in cases of homicide or related offenses.[10] The statute defining this OV is unique in that it bars

---

[8] The trial court did not explain how its conclusion that defendant was planning to get away with murder and was pre-planning a manslaughter defense could be reconciled with its conclusion— well founded in the evidence—that defendant attempted to kill himself immediately after the murder of his wife and that he likely would have succeeded but for the intervention of the police.

[9] The trial court cited no basis for this conclusion and it appears to be wholly speculative. The fact that the parties argued for convictions above and below second-degree murder does not lead to the conclusion that the verdict was a compromise. There was substantial basis in the record for a finding that defendant formed an intent to kill but did not premeditate the murder. The jury was free to conclude that both sides were overreaching in their claims as to what the proper conviction was.

[10] The related offenses are attempted homicide, conspiracy, solicitation to commit a homicide, and assault with intent to commit murder.

judicial factfinding. MCL 777.36(2)(a) states in mandatory terms, "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." In this case, the sentencing court did not have such information and the OV was scored consistent with the jury's verdict, i.e. defendant received 25 points for "unpremeditated intent."

No other guideline factor mandates that it be scored consistent with the jury's verdict. The statute is unambiguous; the trial court may not make a judicial finding as to premeditation when scoring the guidelines. The question then is whether in light of this statutory restriction on judicial fact-finding as to intent when scoring the guidelines, the trial court may nevertheless rely on its own finding of premeditation as grounds to depart from the guidelines. I conclude that a trial court may not do so because it would plainly nullify the Legislature's clear directive that intent in homicide cases is determined conclusively by the jury.[11] To allow the trial court to make findings as to intent inconsistent with the verdict and to use those findings as grounds to impose a longer sentence, would merely engage the court in a charade in which the legislature's command becomes nothing more than a detour on the road to judicial fact-finding concerning homicidal intent.[12] I see no basis to conclude that the legislature intended to define such an illusory process when it adopted MCL 777.36(2)(a).[13]

The majority relies on the *general* principle that sentences that are outside the guidelines range are proper where there are relevant factors not contained in, or given adequate weight by them. Here the trial court suggests that defendant's intent was not given sufficient weight because of the jury's verdict. However, the requirement that the scoring of OV 6 be controlled by the jury verdict is set forth in a *specific* statute. MCL 777.36(2)(a). It is axiomatic that when statutes contain a general provision and a specific provision, the specific provision controls. *People v Calloway*, 500 Mich 180; 895 NW2d 165, 168; 897 NW2d 167, reh den 500 Mich 1025 (2017).

---

[11] It would also create a discontinuity in the role of the trial court. Should a jury convict a defendant of first degree murder, the trial court may not conclude that there was no premeditation and thereby sentence defendant to a term of less than life without parole.

[12] The principle contained within MCL 777.36(2)(a) has a long pedigree in common law as well. See, e.g. *People v Grimmett*, 388 Mich 590, 608; 202 NW2d 278 (1972), overruled on other grounds in *People v White*, 390 Mich 245; 212 NW2d 222 (1973), overruled on other ground in *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004) (remand for resentencing because "the trial judge acted improperly in assuming defendant was guilty of the murder charge when he sentenced defendant on the assault charge.")

[13] The majority takes the view that the legislature intended to allow exactly that. Such a view begs the question why the legislature would have provided for this unique limit on OV 6 scoring if it could be vitiated by a trial court's contrary finding as a basis for departure. If the ultimate determination of homicidal intent or premeditation is one for the judge, why bother to have the limit on OV 6 scoring at all?

The language of MCL 777.36(2)(a) demonstrates that the legislature intended that where the jury is specifically asked to determine intent and premeditation, the court must respect that finding. It would turn this principle on its head to then conclude that because the judge is supposed to respect the jury's verdict in scoring this guideline, that the court may then abandon that respect in imposing a departure sentence. This is not a case of departing due to an aggravating factor not referenced in the guidelines; rather, it is a case of departing based upon a judicial finding, the nature of which the legislature specifically directed to be excluded from consideration. Moreover, the extent of the departure, under which defendant is ineligible for parole consideration until he is 94 years old clearly indicates the court's intent that defendant serve a sentence consistent with a first-degree murder conviction.

## B. Other grounds for departure

Having determined that the trial court could not rely on a finding of premeditation to support its extraordinary departure of over 27 years, it is necessary to consider whether any of the other grounds for departure noted by the court were sufficient grounds upon which to uphold the sentence. A review of the sentencing transcript and the briefs, demonstrates that these alternative grounds are not adequate to justify a sentence that is more than double the top of the guideline range, a 27½ year departure, and a sentence that precludes parole consideration until he is 94 years old.[14]

In reviewing a sentence that departs from the guidelines, we are to rely on the principle of proportionality articulated in *Milbourn*.[15] *People v Steanhouse,* ___ Mich ___; ___ NW2d ___ (2017) (Docket Nos. 152671, 152849, 152871 to 152873, and 152946 to 152948); slip op at 3, 14-16. *Milbourn* dictates that our review of a departure sentence *begins with* an analysis of whether the trial court's rationale for the departure involved circumstances "not adequately embodied within the variables used to score the guidelines." *Milbourn*, 435 Mich at 659-660. The trial court did not offer grounds for departure that were not or could not have been scored in the guidelines. Under *Lockridge* the guidelines are "advisory," and "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015).[16] Courts must both " 'consult those Guidelines and take them into account when sentencing.' " *Id.* at 391, quoting *United States v Booker*, 543 US, 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005). In other words, they remain the starting point for any sentencing determination.

The trial court referenced four reasons for a 27½ year departure other than its finding of premeditation.

---

[14] A term of years sentence may not be found unreasonable *merely* because the defendant would live long enough to ever be considered for parole. However, no case has ever held that we may not even consider it among the totality of the circumstance.

[15] *People v Milbourn*, 435 Mich 630; 461 NW2d 1(1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011).

[16] The trial court while noting the guidelines are advisory also stated that they "don't apply."

First, that the murder was brutal, which, like nearly all murders, it surely was. However, excessive brutality is a factor that the guidelines take into account in OV 7. The trial court did not score OV 7 which should be scored where "a victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37. Whether the facts of this case rise to that level is not clear.[17] But it is clear that the issue of brutality was one that the trial court should have first addressed in the context of OV 7, rather than in the context of a departure sentence.

Second, the trial court stated that a departure was justified because the victim's foster child has been left without a mother. Despite the outrage that this fact may generate, it is not an unusual circumstance in murder as it occurs in every murder in which the victim has a child. Moreover, OV 5, which was scored, increases the sentencing range based upon "serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35.

Third, the trial court stated that "there's a high probability . . . that you will repeat this behavior again." While the likelihood of recidivism is a proper sentencing factor, it is largely taken into account in the prior record variable scoring as well as OV's 12 and 13 which score contemporaneous criminal acts and a continuing pattern of criminal behavior respectively all of which were properly scored at very low levels.[18] A trial court may conclude that these factors do not adequately account for a defendant's likelihood of recidivism, but if so, the court must explain the objective basis for its conclusion, Without such an explanation, the statement that defendant will reoffend is speculative.

---

[17] As held in *People v Hardy*, 494 Mich 430, 443-444; 835 NW2d 340 (2013), "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." While the crime was heinous it is far from clear that either of these inquiries would be answered affirmatively.

[18] *People v Peltola*, 489 Mich 174, 189 n 30; 803 NW2d 140, 148 (2011) discussed the role of PRV scoring to effectuate the purpose of punishing a recidivist. The Court stated:

> [O]ur reading of the statute is consistent with and effectuates the Legislature's intent to promote uniformity and consistency in sentencing through the use of the sentencing guidelines and the general legislative purpose to punish recidivist offenders more severely. See MCL 769.10; MCL 769.11; MCL 769.12; MCL 333.7413; see also *People v Babcock,* 469 Mich 247, 263, 666 NW2d 231 (2003) ("The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment."). By requiring the scoring of the PRVs, our analysis effectuates this purpose by avoiding the untoward consequence of punishing a recidivist drug offender less severely than a first-time drug offender.

Lastly, the trial court noted that defendant's actions directed at blowing up the house, with himself inside it, endangered the neighbors. This is a proper sentencing consideration. However, the trial court, again, used this as grounds to depart from the guidelines rather than to score them. OV 9 allows for points to be scored if additional persons are determined to be "placed in danger of injury or loss of life." MCL 777.39(2)(a). Addressing this as grounds to depart rather than as grounds to score OV 9 is inconsistent with *Milbourn's* prescription that the guidelines remain the starting point in the sentencing process.

## III. CONCLUSION

The trial judge erred in departing from the guidelines based on a finding of premeditation inconsistent with the jury verdict. Accordingly, we should remand for resentencing at which the trial court may rescore the guidelines to account for all relevant factors and if it imposes a departure sentence, it should clearly state its reasons why the guidelines do not adequately address the factor at issue.

/s/ Douglas B. Shapiro