PEOPLE *v.* IACONIS

1. ARREST—DELAYED ARREST—DUE PROCESS—PREJUDICE.

    A delay in obtaining an arrest warrant is not sufficient evidence of prejudice to raise the issue of denial of due process under the state and Federal constitutions, since it is not the delay itself, but the evidence of prejudice resulting from the delay, that violates the due process guarantee.

2. ARREST—DELAYED ARREST—DUE PROCESS.

    A 165-day delay in obtaining an arrest warrant against defendant for illegal sale and possession of marijuana did not deny the defendant due process where the defendant was out-of-state for all but two weeks of that period, where the police wanted to keep the identity of the informer in defendant's case secret until they completed their investigation in other marijuana cases in which the informer was also participating, and where, even though the defendant claimed that the delay caused his alibi witnesses to be unable to testify with certainty to the defendant's presence at their home when the crime was com-

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 5 Am Jur 2d, Arrest §§ 2, 7, 11.

mitted, the defendant did not raise the defense of alibi at two earlier times when his trial was set or at the preliminary examination but waited until a year after his arrest.

CONCURRENCE BY DANHOF, J.

3. ARREST—DELAYED ARREST—DUE PROCESS.
   *A delay in an arrest is not a violation of due process.*

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 February 2, 1971, at Detroit. (Docket No. 9398.) Decided March 26, 1971.

Samuel Iaconis was charged with unlicensed sale and illegal possession of marijuana. Information quashed. The people appeal. Reversed and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Ivan E. Barris,* for defendant.

Before: DANHOF, P. J., and HOLBROOK and BRONSON, JJ.

HOLBROOK, J. The people appeal by leave of this Court the February 26, 1970 order of the trial court which was affirmed on rehearing March 4, 1970, granting defendant's motion to quash the information which charged him in two counts with unlicensed sale and unlawful possession of marijuana contrary to MCLA § 335.152 (Stat Ann 1957 Rev § 18.1122), and MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123).

Because a knowledge of the proceedings and facts is essential to a proper decision in this case, we quote verbatim the concise statement of the proceedings and facts as certified by the trial judge concerning the application of the people for leave to appeal as follows:

"The plaintiff in this case claims by the testimony of Frank Mothersbaugh, a Livonia Police Officer, that the defendant, Samuel Iaconis, made an illegal sale or dispensed and possessed marijuana on November 8, 1967, contrary to § 335.152 and § 335.153 CL 1948, as amended by PA 1952 No 266.

"Testimony taken at the preliminary examination on March 5, 1969, and evidentiary hearing on March 23, 1970, was as follows:

"Frank Mothersbaugh came in contact with Samuel Iaconis in 1966, when Mothersbaugh was working on the police detail at the Detroit Race Course. He was pointed out by another officer.

"Mothersbaugh received information from an informer that Iaconis would sell him a quantity of marijuana at a certain location which he later learned was in the City of Detroit.

"Mothersbaugh saw pictures of Iaconis. On November 8, 1967, he went to the Brunch's Restaurant. He saw Iaconis in the restaurant and recognized him. He said nothing to Iaconis.

"A few minutes later, Iaconis left the building and Mothersbaugh left. He followed and accompanied Iaconis to Iaconis' automobile. The automobile was parked on the front lot, located on the south side of the restaurant.

"Iaconis unlocked the passenger's side of the vehicle. Mothersbaugh entered as Iaconis walked around the driver's side and entered the vehicle.

"Iaconis said, 'Frank?' Mothersbaugh said, 'Yes. Are you Sam?' Iaconis said 'Yes, here you are.' At this point, Iaconis reached into a trash container

located in the center of the vehicle in the front seat portion and removed a brown paper bag and handed it to Mothersbaugh. Mothersbaugh opened the bag and observed three smaller white paper bags. He observed one of these bags contained a plant material that appeared to be marijuana.

"Iaconis was given $50 by Mothersbaugh. Fifty dollars was the prior agreed price.

"There were four to six other police officers present at the scene in the area of the restaurant. They had visual observation of the restaurant and the automobile but not the transaction itself.

"Mothersbaugh left the parking lot in another vehicle. This was five minutes from when he entered the restaurant.

"A Detective Asiala of the Michigan State Police followed right behind Mothersbaugh. The two officers met between the scene and at the state police post.

"Mothersbaugh turned the brown bag over to Asiala at one of these times. Mothersbaugh could not remember at which time.

"It took Mothersbaugh ten minutes to get to the state police post. He spent ten minutes at the post and returned to his Livonia office 15 minutes later. At this time, Mothersbaugh recorded the events.

"He testified that he had no independent recollection of the particular facts of the transaction. He had a general recollection. He testified from his notes as to details. He did not remember or recollect the color of Iaconis' car. He could not recollect or recall any psychedelic design on the defendant's car nor did he recall or recollect a stuffed animal in the back seat of the defendant's car. He knew that the defendant had a Florida license plate on the car but did not get or recall the numbers.

"Mothersbaugh had no independent knowledge of whether an electronic device was used.

"At the examination, Mothersbaugh stated (March 5, 1969) that 100 people made attempts or sold him narcotics within the past year.

"A warrant was requested by the Michigan State Police and recommended by the prosecutor of Wayne County on April 22, 1968 for sale, dispensing, and possession and control of marijuana on April 22, 1968.

"The Honorable James R. McCann, Municipal Judge for the City of Livonia, signed the warrant on the same date.

"Testimony taken at the aforesaid evidentiary hearing and examination indicated the following as to why the request was not made to the prosecutor before April 22, 1968:

"The delay between the date of the alleged purchase and the last of February was due to the fact that the informer used in this case was also used in three other cases connected with this informer.

"The warrant was not requested in that period because the Livonia Police Department did not want to divulge the informer's identity as there was a continuous investigation on the other cases.

"The request on the three other cases was made in the last of February by the Livonia Police Department. Legal proceedings were instituted in these cases and convictions were obtained.

"From March until the date of Iaconis' warrant, the warrant was not requested due to the fact that the defendant was in Florida at no specific location. No extradiction proceedings were instituted.

"Mothersbaugh obtained this information a week after the sale took place.

"On or about April 22, 1968, Mothersbaugh received information that the defendant was back in Michigan from Florida and the warrant was requested.

"Mothersbaugh and the state police then made an attempt to locate the defendant at his residence on Kendall in Dearborn. He was not found.

"Three or four days later, Mothersbaugh and other state police officers arrested Iaconis at the Hazel Park Race Track on April 29, 1968.

"The Wayne County Justice Court file for the Municipal Court for the City of Livonia, No 5756, and the Wayne County Circuit Court file No 47099 shows the following:

"That after the Honorable James R. McCann issued a warrant charging the defendant with sale and possession and control of marijuana on November 8, 1967, on April 22, 1968, Iaconis was arraigned on April 29, 1968 and entered a plea of not guilty.

"Examination was set for May 7, 1968. The defendant's attorney requested an adjournment and waived the ten day rule. Examination was set for May 28, 1968.

"On May 28, 1968, the examination was adjourned until July 16, 1968 at the request of the defendant.

"The examination was then adjourned until August 20, 1968. The examination was held and the defendant was bound over for trial on the charges contained in the complaint and warrant.

"On September 4, 1968, the return on examination was sent to the Circuit Court for Wayne County.

"Defendant, on April 30, 1968, filed a motion for the reduction of the defendant's bond which motion was granted before the Honorable Joseph A. Sullivan, Wayne County Circuit Court Judge.

"An information was filed by the people on September 13, 1968, charging the defendant with sale or dispensing, possessing and controlling marijuana.

"Arraignment and pre-trial was set for September 25, 1968. Notice was sent to the defendant and his attorney. The notice addressed to the defendant was returned stating that there was no such address as 7755 Kendall, Detroit, Michigan.

"On September 26, 1968, the Honorable Joseph A. Sullivan canceled bond and issued a *capias*.

"These orders were set aside on October 3, 1968 and arraignment was set for October 9, 1968.

"On October 9, 1968, the defendant was arraigned and pre-trial was held before the Honorable George E. Bowles, a judge of the Wayne County Circuit Court. The defendant pleaded not guilty.

"The cause was assigned for trial on November 7, 1968, before the Honorable Victor J. Baum, a judge of the Circuit Court for Wayne County. The cause was adjourned until January 3, 1969. Defense counsel had another cause in progress. The people's chemist was not available.

"The cause was then assigned for trial on January 6, 1969 before the Honorable Cornelia G. Kennedy, a judge of the Circuit Court for the County of Wayne. No notice of alibi was filed.

"By written order dated January 7, 1969, the court determined that the offense was committed in the City of Detroit and not in the City of Dearborn. The court ordered the case dismissed because it was without jurisdiction to conduct a trial.

"A warrant was issued by the Honorable Frank G. Schemanske, a judge of the Recorder's Court for the City of Detroit on January 6, 1969 for sale or dispensing and possession of marijuana by Iaconis on November 8, 1967. § 335.152 and § 335.153, CL 1948 Act 66 PA 1952.

"On February 5, 1969, the defendant was arraigned on the warrant before the Honorable Samuel H. Olsen, a judge of the Recorder's Court. Examination was set for February 10, 1969.

"On February 10, 1969, the Honorable Samuel H. Olsen adjourned the examination until February 24, 1969. The defendant was to retain new counsel.

"On February 24, 1969, the Honorable William J. Sutherland, Municipal Judge assigned to the Recorder's Court, adjourned the examination until March 5, 1969. The defendant appeared without counsel and indicated his desire to retain his own counsel.

"On March 5, 1969, an examination was held before the Honorable Robert E. DeMascio, a judge of the Recorder's Court of the City of Detroit. The defendant was bound over for trial on the charges contained in the complaint and warrant.

"An information was filed by the people charging that the defendant sold or dispensed and possessed marijuana. The defendant was arraigned upon the information on March 17, 1969 before the Honorable Elvin L. Davenport, a judge of the Recorder's Court for the City of Detroit. Defendant stood mute and a plea of not guilty was entered.

"On April 28, 1969, a notice of alibi was filed by the defendant that on November 8, 1967, the defendant was not in Detroit but in Clarksbury, West Virginia at his grandmother's home at 614 Buckingham. The defendant alleged that Teresa Romano, 614 Buckingham, Clarksbury, West Virginia, and Barbara Ann Beto, 216 Waldeck Street, Clarksbury, West Virginia, among others, would be called as witnesses.

"The cause was then set for trial on November 17, 1969. No court being open, the matter was adjourned until March 12, 1970.

"On January 26, 1970, the defendant filed a motion to quash the information with a notice of hearing on February 2, 1970.

"He alleged by way of notarized affidavits of Barbara Beto and Teresa Romano in Harrison County, West Virginia, that: 'Affiant further says that Sam Iaconis, of 7755 Kendall Street, Dearborn, Michigan, came to her home in the City of Clarksbury, West Virginia, some time during the first two weeks of November, 1967.' He alleged that two of his witnesses were unable with any degree of certainty to place the date that the defendant was in Clarksbury, West Virginia. That the people, by their unexplainable delay, have deprived the defendant due process under *People* v. *Hernandez* (1968), 15 Mich App 141.

"The motion was adjourned until February 13, 1970 and then until February 20, 1970.

"On February 26, 1970, the court quashed the information by written order, deciding that 'considering the totality of the circumstances involved in the instant case, the court finds that there was an unreasonable delay between the date of the alleged offense and the issuance of the warrant.'

"On March 5, 1970, the people filed a motion for a rehearing on order quashing the information and for an evidentiary hearing on the reasonableness of the delay.

"The people alleged that *People* v. *Hernandez, supra,* was contrary to *People* v. *Noble* (1969), 18 Mich App 300, and the statute of limitations § 767-.24 CL 1948, and they wanted to present evidence directly related to the issue, and that the defendant was not denied due process.

"The motion was noticed for hearing on March 16, 1970 and adjourned until March 23, 1970 at the request of both parties.

"On March 23, 1970, the court granted a rehearing and took evidence. Wayne County Justice Court file No 5756 of the Municipal Court of Livonia, and Wayne County Circuit Court file No 47099 were admitted in evidence as to transactions of the cause prior to the cause being instituted in Recorder's Court.

"Frank Mothersbaugh was also called as a witness by the people. The court, by written order dated March 24, 1970, affirmed its order of February 26, 1970.

"It is from the motion to quash the information which plaintiff seeks leave to appeal."

Plaintiff raises two issues which will be stated and dealt with in order.

I

Whether a 165-day delay between the date of the alleged offense and the date of the warrant denied defendant the due process guaranteed him by the Michigan and Federal Constitutions, where MCLA § 767.24 (Stat Ann 1954 Rev § 28.964) provides that the people may institute an indictment within 6 years of the alleged offense?

Defendant cites the cases of *People* v. *Hernandez* (1968), 15 Mich App 141, and *Ross* v. *United States* (1965), 121 App DC 233 (349 F2d 210) to support his position that the delay denied defendant the due process guaranteed him by the Michigan and Federal Constitutions. The mere fact that the people delayed for 165 days after the offense before obtaining a warrant is insufficient evidence of prejudice to raise the issue of due process being denied the defendant under the Michigan and Federal Constitutions. We stated in *Hernandez, supra,* p 146:

"It is this evidence[1] of *prejudice* that results in the violation of due process which the court refers to in *Ross* v. *United States* (1965), 121 App DC 233 (349 F2d 210), *not the delay itself,* which is the guideline."

II

Did the defendant make out a meritorious showing of some prejudice, and, if so, did the people present and show clear and convincing proof to the trier of fact: (1) that the delay was explainable, (2) it was not deliberate, and (3) no undue prejudice attached to the defendant under *People* v. *Hernandez, supra,* pp 146, 147?

It is true that there were many delays in these proceedings, some caused by the people and some

---

[1] Other material facts stated in the opinion.

by the defendant. What we are concerned with here in the first instance is: Did the first delay of 165 days from the date of the offense to the date of defendant's arrest prejudice the defendant in his defense of the case? The people desired to delay the request of the warrant until the end of February or the first part of March 1968 because the informer used in this case was also used in three other cases and the police did not want to divulge the informer's identity as there was a continuing investigation on these cases. This procedure is justified under the decision in *Wilson* v. *United States* (CA 9, 1969), 409 F2d 184. It is stated on p 186 of the opinion:

"Under the *Ross* rule the reasonableness of the police conduct in the particular case is to be weighed against the possible prejudice to the defendant. 121 App DC 235, 236 (349 F2d 212, 213). Here, appellant's arrest was postponed because at the time of the sale to Abbey, Abbey and Bishop were working on other narcotics cases. An earlier arrest would have revealed their identities and made them useless in the other cases. * * * It thus appears that the delay of appellant's arrest was for a valid, reasonable police purpose."

The same circumstances are present in the instant case. Other facts are also important. Defendant left the State of Michigan within one week of the date of the offense for the State of Florida. He returned in April 1968 about a week before he was located and arrested. During the time that he was out of the state, the statute of limitations was tolled.[2] Defendant cannot complain now for the delay of 165 days when he spent all of that period lacking about two weeks outside of the state. Further, defendant's trial on the charges in the

---

[2] MCLA § 767.24 (Stat Ann 1954 Rev § 28.964).

Circuit Court for Wayne County was set on two different occasions. At both of these times as well as at the preliminary examination, defendant was represented by counsel. No notice of alibi was filed on behalf of the defendant in the Circuit Court. For the first time on April 28, 1969, a notice of alibi was filed by defendant in the Recorder's Court for the City of Detroit asserting that he was, at the time of the offense in Clarksbury, West Virginia. On January 26, 1970, defendant filed a motion to quash the information and attached two affidavits, those of Barbara Beto and Teresa Romano, both dated December 18, 1969, stating that defendant visited at their homes sometime in the first two weeks in November 1967. The defendant then asserted that the delay of the people in proceeding with the complaint, warrant, and arrest of the defendant was prejudicial to him. He based this claim upon the assertion that the two witnesses could not, at that date, ascertain with certainty the exact time or times that he was at their homes. There is no showing by defendant that he attempted to ascertain his whereabouts on the date of the offense from these witnesses prior to December 1969. The witnesses' inability to specify the date of defendant's presence in Clarksbury, West Virginia, is attributable as much to infirmity of the alibi as to the delay. Even if their inability is attributable to delay alone, no showing is made that the offending delay was the five and one-half month delay before arrest, rather than the year's delay caused by court proceedings. The latter delay is incident to court proceedings and affects the people's case as much as defendant's. The fact that the court delay was compounded by a year's proceeding wasted in a court without jurisdiction, benefits defendant nothing. Defendant had, at all times, the knowledge of the

facts and the legal counsel to discover and remedy the jurisdictional defect. His failure to do so could have been strategic. It appears that the defense of alibi was an afterthought, for no such claim was made in the circuit court action in Wayne County. The affidavits of the two witnesses are consistent with the facts that he was present in Michigan on the date and at the scene of the offense as testified to by at least two witnesses. The people state that there were at least two to four other witnesses who were present and available to give testimony that they observed the defendant at the scene of the offense. The chances of misidentifying the defendant were extremely remote. *Wilson* v. *United States, supra,* p 187.

We rule that the defendant failed to show that some prejudice resulted to him from the delay between the date of the offense to the date of arrest.

*Arguendo,* assuming that it could be said that some prejudice was shown by defendant, we come to the determination that (1) the delay was satisfactorily explained by the requirements of effective law enforcement, (2) that it was not deliberately planned, *i.e.,* the needs under requirement number (1) having extended to the latter part of February 1968 and the defendant being out of the state until about a week before he was arrested and (3) that no undue prejudice attached to the defendant under *People* v. *Hernandez, supra.*

We said in *Hernandez,* p 146:

"The facts in each case are to be fully considered and the balancing of interests must be weighed to determine whether there is a denial of due process. To do this in this case, we must consider the character and credibility of the witness, Alma Silva; the indication of a 'deal' between that witness and the prosecution; the lack of corroborating material evi-

dence; the incapabilities inherent in defendant's character; the indignity and unnecessary severity of the manner in which defendant was arrested; the alleged fact that there was marked money used which was not recovered and the delay of 42 days before arrest of the defendant, an uneducated illiterate man."

In the instant case, defendant was known by the police officer, whereas in *Hernandez,* there was the bare testimony of one witness of highly questionable credibility. In *Hernandez,* there was no corroborating witness. Here there are four and possibly six corroborating witnesses. In this case there is no evidence of a deal between the prosecution and any party in the litigation. Unlike *Hernandez,* there are no incapabilities inherent in defendant's character; no claim has been made that the defendant is uneducated or illiterate. Also, defendant did not allege that he suffered any unnecessary severity in the manner of his arrest. Further, Hernandez was available all during the time of the delay whereas in the instant case defendant was not available, being out of the state for all but two weeks of the delay period. Applying *Hernandez, supra,* we rule that the people have shown by clear and convincing proof that (1) the delay was explainable, (2) it was not deliberate, and (3) no undue prejudice attached to the defendant.

The order of the trial court quashing the information is hereby set aside, and the case is remanded for further proceedings not inconsistent with this opinion.

Bronson, J., concurred.

Danhof, J., *(concurring).* I concur with the result reached by the majority, but because their opin-

ion perpetuates what I consider to be the erroneous philosophy expressed in *People* v. *Hernandez* (1968), 15 Mich App 141, I cannot subscribe to the same. See *People* v. *Noble* (1969), 18 Mich App 300, fn 1, p 302:

"The Court is aware of *People* v. *Hernandez* (1968), 15 Mich App 141, which by a decision of two to one considers a delay in arrest a violation of due process. This panel does not agree with the holding of that case and will not follow it until the ruling of that case is determined controlling in similar cases by the Michigan Supreme Court."

The order of the trial judge quashing the information and discharging the defendant is reversed; the information reinstated and the defendant remanded to the trial court for trial.