PEOPLE v FIORINI

1. CRIMINAL LAW—DELAY IN BRINGING CHARGE—DELAYED ARREST—
   EVIDENCE—PREJUDICE—BURDEN OF PROOF.

   The length of delay between an alleged offense and the arrest
   therefor per se is not conclusive evidence of prejudice but a
   delay of 43 months raises a question of the propriety of the
   prosecution's actions and the burden must be upon the prosecu-
   tion to show that the delay was explainable, not deliberate and
   that the defendant has not been prejudiced thereby.

2. CRIMINAL LAW—DELAY IN BRINGING CHARGE—DELAYED ARREST—
   PREJUDICE—BURDEN OF PROOF.

   The prosecution did not carry its burden of showing a 43-month
   delay between an alleged offense and the arrest was not delib-
   erate where no explanation other than negligence was prof-
   fered by the prosecution.

3. CRIMINAL LAW—SPEEDY TRIAL—DELAY IN BRINGING CHARGE—DE-
   LAYED ARREST—PREJUDICE.

   Analogy to standards of prejudice in speedy trial cases is appro-
   priate in a case involving alleged denial of due process and a
   fair trial where the length of delay between the alleged offense
   and the arrest therefor was 43 months and where the investiga-
   tion had been completed within a week of the crime, identifica-
   tion of an assailant made, and his whereabouts known.

4. CRIMINAL LAW—DELAY IN BRINGING CHARGE—DELAYED ARREST—
   PREJUDICE—BURDEN OF PROOF—ALIBI—EVIDENCE—POLICE RE-
   PORTS—REFRESHING MEMORY—CROSS-EXAMINATION.

   A defendant was prejudiced by the prosecution's waiting 43
   months after investigation of a crime was completed before
   arresting him where the prosecution did not explain the delay,
   and failed to carry its burden of showing that the delay was not
   deliberate; the defendant's defense was one of alibi and it
   appears that the defendant has been prejudiced because one
   alibi witness died in the interim and another could not remem-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 5 Am Jur 2d, Arrest §§ 76, 77.
[3] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.

ber many details of the event, testifying police officers made use of a composite record of several officers' notes as a means of refreshing their memories because the original notes were not available and presumably lost, and defendant was prejudiced by his inability to review the original notes for cross-examination purposes.

Appeal from Wayne, Michael L. Stacey, J. Submitted Division 1 April 8, 1974, at Detroit. (Docket No. 15546.) Decided May 29, 1974. Leave to appeal denied, 392 Mich —.

Americo J. Fiorini was convicted of armed robbery. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Stuart M. Israel,* Assistant State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. Defendant Fiorini was tried before a jury on the charge of armed robbery, MCLA 750.529; MSA 28.797, in Wayne County Circuit Court and was found guilty. On August 9, 1972, he was sentenced to 18 to 40 years imprisonment.

On August 30, 1968, the Lakepointe Drugstore in Northville Township, Michigan, was robbed, at closing time. Soon after police arrived and took descriptions of the assailant from Gerald Dobrusin, the owner of the store and pharmacist, and Dale

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Randall and Diane Penland (nee Oliver), employees of the store. Within one week the complaining witness Dobrusin had made a positive photographic identification of defendant. Employee Randall was shown a photograph of the defendant but was unable to identify him as the assailant. The third eyewitness, Penland, was not shown the photograph.

As a result of the description, a composite description was sent by teletype. Testimony was unclear as to whether this teletype or another specifically named the defendant.[1]

By coincidence, complainant Dobrusin attended a lineup in March 1972. Appearing in this lineup was the defendant.[2] Dobrusin identified the defendant as the assailant in the robbery at his Lakepointe Drugstore. Thereafter, a complaint was filed and a warrant issued in April 1972.

From early October 1968 until August 1971 defendant was continuously available to answer any charges that might have been brought on this robbery. For a number of months, at the outset, he was in the Wayne County Jail, and thereafter, having been convicted on a felonious assault charge, was in the State Prison at Jackson. The investigation was conducted by the Wayne County Sheriff's office.

On April 6, 10, and 14, 1972, preliminary examination was had. Defendant moved to have the charges against him dismissed, alleging violations of Michigan and Federal constitutional rights as to fair trial, due process of law, and speedy trial. He contended that a delay of three years and seven months between identification of his photograph

---

[1] It was unclear as to whether a second teletype was sent at all.

[2] This lineup was in connection with a robbery which occurred in February 1972.

and initiation of proceedings against him had irreparably prejudiced him due to the loss of a witness by death, impairment of other witnesses due to faded memory, and impaired ability to cross-examine prosecution witnesses. The district court judge bound defendant over to Wayne County Circuit Court on the charge. He denied the appellant's motion to dismiss on the basis that, as examining magistrate, he lacked jurisdiction to entertain the motion.

Thereafter, defendant brought a motion, on the same grounds, before the Wayne County Circuit Court presiding judge and after a hearing it was denied without prejudice. The motion was then considered by the trial judge, who denied the motion on July 7, 1972.

At the hearing before the presiding judge the prosecution admitted that the people, unfortunately, did let this case get away from them. Further, Detective Thomas Sheedy testified at the preliminary examination that to his knowledge the case sat in the file for three years and eight months.

Defendant here appeals as of right and sets out a number of issues. It is only necessary to discuss appellant's first issue, *viz.,* that he was denied due process of law, fair trial, and speedy trial. We point out that we were not assisted by the fact that the prosecutor's brief was filed within one day of oral argument.

In *Ross v United States,* 121 US App DC 233; 349 F2d 210 (1965), there was a seven-month delay between the alleged offense and the swearing out of a complaint. The conviction was reversed on the grounds of denial of due process. The next year, in discussing *Ross,* the District of Columbia Court of Appeals held that *Ross* had looked towards two

factors: (1) "the prejudice to the defendant stemming from the method of investigation"; and, (2) "the reasonableness of the police conduct". *Woody v United States,* 125 US App DC 192, 194; 370 F2d 214, 216 (1966). The Court said of *Ross:*

> "*Ross* fashioned a prophylactic rule of fairness designed to protect innocent people from conviction made possible by the delay attendant on undercover police investigation. The ultimate prejudice to the accused, the risk that he will be convicted although innocent, is not reflected in the evidence presented at trial. But it nevertheles *[sic]* exists if the accused has been unable to prepare a defense because of the delay before arrest." p 195, n 7; 370 F2d 217.

This Court in its holding in *People v Hernandez,* 15 Mich App 141, 147; 166 NW2d 281, 284 (1968), relied upon *Ross* and held:

> "[W]here *some* prejudice is shown, as it is shown in this case, it can be permitted and not be the basis for a finding of lack of due process only where the following elements are present and shown clearly and convincingly to the trier of fact: (1) when the delay is explainable, (2) when it is not deliberate, (3) where no *undue* prejudice attaches to the defendant." (Emphasis in original.)

*Hernandez,* p 146; 166 NW2d 284, said the focus was not the delay per se but rather the evidence of prejudice. See, also, *People v Noble,* 18 Mich App 300; 170 NW2d 916 (1969); *People v Rios,* 27 Mich App 54; 183 NW2d 321 (1970); *People v Iaconis,* 31 Mich App 703; 188 NW2d 175 (1971); *People v Johnson,* 41 Mich App 34; 199 NW2d 561 (1972); People v Robinson, 41 Mich App 259; 199 NW2d 878 (1972); *People v Davis,* 53 Mich App 94; 218 NW2d 787 (1974). The defendant has here asserted a number of grounds of prejudice, *e.g.,* inability to

cross-examine and impeach the people's witnesses, loss of police notes and witnesses' failure to recall. At the outset, he has made a showing of some prejudice.

While the length of delay per se is not conclusive, a delay of three years, seven months certainly raises a question of the propriety of the prosecution's actions. Thus, the burden must be upon the prosecution to show that the delay was explainable, not deliberate and that the defendant has not been prejudiced thereby.

In *Rios, supra, reversed on other grounds* 386 Mich 172; 191 NW2d 297 (1971), the similar assertion of denial of due process and fair trial on the basis of delay was denied on the basis, *inter alia,* that the delay was a function of a desire by police to not jeopardize infiltration into other narcotic activities in the area. In *Johnson, supra,* p 43; 199 NW2d 565, the delay was a direct consequence of the defendant's activities. Speaking for this Court, this writer wrote:

"It cannot be said that the prearrest delay was either deliberate or unexplained. An attempt was made to arrest defendant at his home. The warrant was left with his father, and it is highly unlikely that defendant was unaware of it. On several occasions he eluded officers trying to apprehend him; as indicated in *People v Iaconis, supra, one cannot complain of a delay which he helped create."* (Emphasis supplied.)

In the case at bar, there is no assertion that the defendant played any part in the delay, *i.e.,* that he was other than available to answer any charges. In *Iaconis, supra,* p 713; 188 NW2d 180, the defendant spent all but approximately 2 weeks of the 165 days in question outside of the state. Further, in this case the contingencies of undercover police work and infiltration, as in narcotic

cases, are not present. No explanation other than negligence has been proffered by the prosecution. While we cannot say that the delay was deliberate, the prosecution has not carried its burden of showing that it wasn't deliberate.

MCLA 780.131; MSA 28.969(1) provides:

"Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against any inmate of a penal institution of this state a criminal offense for which a prison sentence might be imposed upon conviction, such inmate shall be brought to trial within 180 days after the department of corrections shall cause to be delivered to the prosecuting attorney of the county in which such warrant, indictment, information or complaint is pending written notice of the place of imprisonment of such inmate and a request for final disposition of such warrant, indictment, information or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner. The written notice and statement provided herein shall be delivered by certified mail."

And MCLA 780.133; MSA 28.969(3) provides:

"In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

*Arguendo,* in the instant case the law enforcement officials and the prosecutor's office had the

necessary knowledge to charge the defendant and knowledge of his whereabouts (jail and prison), but failed to seek a warrant. Had the facts present herein been within the statutes, the action here taken would have been illegal.

While the right to a speedy trial does not attach until arrest and indictment, *People v Grimmett,* 388 Mich 590, 601–602; 202 NW2d 278, 283 (1972); *United States v Marion,* 404 US 307, 313; 92 S Ct 455, 459; 30 L Ed 2d 468, 474 (1971), we feel analogy to standards of prejudice in speedy trial cases is not inappropriate where investigation has been completed within a week, identification of an assailant has been made, and his whereabouts is known.[3] *Cf.: People v Rodriguez,* 47 Mich App 483; 209 NW2d 441 (1973); see, also, *People v Johnson, supra,* pp 40–41; 199 NW2d 564; *Mann v United States,* 113 US App DC 27, 29–30; 304 F2d 394, 396–397 (1962); *Dickey v Florida,* 398 US 30, 40–42; 90 S Ct 1564, 1569–1571; 26 L Ed 2d 26, 33–34 (1970) (concurring opinion of Mr. Justice Brennan); and *United States v Marion, supra,* 324–325; 92 S Ct 465–466; 30 L Ed 2d 481.

*People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948), involved the assertion of a denial of speedy trial. The Supreme Court held that a delay of 18 months raised a presumption of prejudice. When a period in excess of 18 months is involved, the state bears a very heavy burden of justification. *Grimmett, supra,* p 606; 202 NW2d 286. The burden shifts to the prosecution to show that there has been no injury. *People v Collins,* 388 Mich 680, 695; 202 NW2d 769, 776 (1972).

---

[3] Detective Frank Van Wulfen, who was in charge of the original investigation, testified that, where an individual had been identified and resided within the jurisdiction or political boundary of the office, *i.e.,* Wayne County, normally the individual would be arrested and a live showup had.

In *Barker v Wingo,* 407 US 514, 532; 92 S Ct 2182, 2193; 33 L Ed 2d 101, 118 (1972), Mr. Justice Powell set out three interests involved in assessing assertions of prejudices: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and, (3) limiting the possibility that the defense will be impaired; he wrote:

"Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown."

Fiorini's defense was one of alibi; which was properly noticed. He has here asserted that his defense was prejudiced in that one alibi witness died in the interim and at least one other was unable to recall details to any degree of believability. He further asserts that the lapse of time, and its consequent diminution of memory, aided the prosecution while impugning the credibility of defense witnesses; that he was prejudiced in his ability to impeach the people's witnesses, because the event took place so long previous to arrest and trial that the witnesses were unable to remember many details of the event. Also, the testifying police officers made use of a composite record of several officers' notes. Their original notes were not available and had presumably been lost.

"We conclude that if the reports of the officers prepared at the end of a day's work are to be allowed in evidence, they must be accompanied by the fragmentary notes from which each report was prepared. Only in this fashion will it be possible for counsel for a

defendant to proceed with a meaningful cross-examination of the officer." *People v Rosborough,* 387 Mich 183, 194–195; 195 NW2d 255, 261 (1972).

While the report was not offered into evidence, the officers used it as a means of refreshing their memories. In assessing possible prejudice in *Dickey v Florida,* 398 US 30, 36; 90 S Ct 1564, 1568; 26 L Ed 2d 26, 31 (1970), Mr. Chief Justice Burger included the facts that, in the interval, two witnesses had died and another potential witness had become unavailable, and that police records of possible relevance had been lost or destroyed. It is certain that defendant was prejudiced by his inability to review the original notes for cross-examination purposes.

The case against the defendant was founded largely upon identification by the three eyewitnesses. "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification". *United States v Wade,* 388 US 218, 228; 87 S Ct 1926, 1933; 18 L Ed 2d 1149, 1158 (1967). See, also, *People v Anderson,* 389 Mich 155, 173; 205 NW2d 461, 469 (1973). Defendant's inability to adequately test the eyewitnesses' ability to recall, prejudiced him.

In *People v Chism,* 390 Mich 104, 112; 211 NW2d 193, 196 (1973), the Court said that a delay of 27 months, without appropriate explanation, was too long. Likewise, a delay of 43 months in this case requires an appropriate explanation. The prosecution having not explained the delay, nor carried its burden of showing that the delay was not deliberate; and it appearing that defendant has shown that he has been prejudiced, we are constrained to reverse defendant's conviction, without a new trial.

All concurred.