PEOPLE v FIORINI (ON REHEARING)

OPINION OF THE COURT

1. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO SPEEDY TRIAL—
ATTACHING OF RIGHT.

The Sixth Amendment speedy-trial provision has no application until the putative defendant in some way becomes an accused; the amendment affords no protection to those not yet accused, nor does it require the government to discover, investigate, and accuse any person within any particular period of time (US Const, Am VI).

2. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—DELAY IN ARREST—AT-
TACHING OF RIGHT.

A delay of 43 months from the time a crime was committed to the date a complaint was filed and a warrant issued did not deny a defendant his right to a speedy trial because the right to a speedy trial attaches when a defendant is arrested and only three months had elapsed from the time of defendant's arrest until his trial.

3. CRIMINAL LAW—DUE PROCESS—DELAY IN ARREST—PREJUDICE.

Delay in arrest does not of itself amount to a violation of due process; the defendant must show specific prejudicial effect of the delay.

4. CRIMINAL LAW—DELAY IN ARREST—WITNESSES—ALIBI WITNESS—
DEATH OF WITNESS—CUMULATIVE TESTIMONY—PREJUDICE.

A defendant was not prejudiced by the death of an alibi witness

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 241 *et seq.*
[3, 6–9] 5 Am Jur 2d, Arrest §§ 2, 3.
  16 Am Jur 2d, Constitutional Law § 542 *et seq.*
  21 Am Jur 2d, Criminal Law § 220.
[4] 29 Am Jur 2d, Evidence §§ 4, 186, 256, 440.
[5] 30 Am Jur 2d, Evidence § 1080.
  75 Am Jur 2d, Trial § 434.
  58 Am Jur, Witnesses § 862.
[10, 11] 17 Am Jur 2d, Continuance §§ 4, 27 *et seq.*

during a delay in bringing the defendant to trial where the witness was one of twelve people who allegedly were with the defendant at a wedding anniversary celebration on the night of the crime and the testimony of that alibi witness would have been cumulative.

5. WITNESSES—CREDIBILITY—JURY.

The credibility of witnesses is a matter for the jury to decide.

6. CRIMINAL LAW—DELAY IN ARREST—EVIDENCE—LOSS OF EVIDENCE—
POLICE—ORIGINAL NOTES—PREJUDICE.

The loss or destruction of police records and their original notes, during a delay between the occurrence of a crime and the arrest of a defendant, may be considered when assessing the prejudice caused by the delay; however, failure of the police to retain their original notes is not always prejudicial to a defendant.

DISSENT BY D. E. HOLBROOK, J.

7. CRIMINAL LAW—DELAY IN ARREST—NEGLIGENCE—PREJUDICE.

*Negligence cannot excuse a governmental delay in arresting a defendant when it is coupled with a showing of prejudice, even though negligence in and of itself may be excused.*

8. CRIMINAL LAW—DELAY IN ARREST—REASON FOR DELAY—LENGTH
OF DELAY—PREJUDICE—DUE PROCESS.

*The important considerations when determining the necessity for governmental delay in arresting a defendant are the importance of the reason for the delay, the length of the delay, and the potential for prejudice; the resolution of a due process claim based upon governmental delay in arrest or indictment requires a balancing of the reasonableness of the delay against the prejudice to the accused.*

9. CRIMINAL LAW—DELAY IN ARREST—43-MONTH DELAY—NEGLIGENCE
—PREJUDICE—WITNESSES—CREDIBILITY—DEATH OF WITNESS—
CROSS-EXAMINATION—LOSS OF EVIDENCE.

*The conviction of a defendant who was not arrested until 43 months after the crime was committed should be reversed where the delay was due to the negligence of the prosecution in failing to pursue the cause with diligence and where the defendant was prejudiced because the recollection of his alibi witnesses had dimmed and they were less credible, one witness had died, the dimmed memories of the prosecution witnesses*

*impaired cross-examination, and the cross-examination of police officers who used a composite record and had lost their original notes taken from the scene was severely hindered.*

10. CRIMINAL LAW—CONTINUANCE—CONSTITUTIONAL RIGHT—ASSERTION OF RIGHT—NEGLIGENCE—PRIOR CONTINUANCE.

*The propriety of a criminal defendant's motion for a continuance is tested by a four-pronged approach: (1) whether the defendent asserted a constitutional right, (2) whether he had a legitimate reason for asserting this right, (3) whether he was guilty of negligence, and (4) whether he had caused the trial to be adjourned before.*

11. CRIMINAL LAW—CONTINUANCE—DISCRETION—ABUSE OF DISCRETION—CONSTITUTIONAL RIGHT—EVIDENCE—WITNESSES—NEGLIGENCE—PRIOR CONTINUANCES.

*Denial of a criminal defendant's motion for a continuance was an abuse of discretion where the defendant was asserting his constitutional right to present witnesses and evidence in his behalf, the right was based on an inability to procure the attendance of individuals considered to be vital witnesses, defendant was not negligent in asserting his right, and he had not previously asked for a continuance.*

Appeal from Wayne, Michael L. Stacey, J. Submitted Division 1 April 8, 1974, at Detroit. (Docket No. 15546.) Decided May 29, 1974. Opinion on rehearing filed March 10, 1975. Leave to appeal applied for.

Americo J. Fiorini was convicted of armed robbery. Defendant appeals. Reversed, 53 Mich App 389 (1974). On rehearing, conviction affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Stuart M. Israel,* Assistant State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK and VAN VALKENBURG,* JJ.

## ON REHEARING

J. H. GILLIS, P. J. This case comes here on an application for rehearing filed by the people.

Defendant was tried before a jury on the charge of armed robbery, MCLA 750.529; MSA 28.797, in Wayne County Circuit Court and was found guilty. He was sentenced to 18 to 40 years imprisonment.

Defendant appealed as of right, alleging that he was denied due process of law, fair trial, and speedy trial because there was a delay of 43 months from the time of the commission of the offense to the date a complaint was filed and a warrant issued. This Court reversed on the basis that defendant had shown some prejudice, and the prosecution had failed to show that the delay was explainable and not deliberate and that the defendant was not unduly prejudiced thereby. *People v Fiorini,* 53 Mich App 389; 220 NW2d 70 (1974).

The appellee-prosecutor sought a rehearing and remand for a full and extensive hearing on the reasons for the delay, alleging further that there was no prejudice shown against defendant. Pursuant to that request, we ordered a remand to the trial judge.

A hearing was held, and the trial judge found that the delay "was not occasioned by malice, was not intentional, and was indeed, quite inadver-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tent". He further found that no prejudice resulted to the defendant as a result of the delay.

We grant appellee's motion for rehearing and reverse our prior decision.

I

On August 30, 1968, the Lakepointe Drugstore in Northville Township was robbed. Soon after the robbery, the police arrived and took descriptions of the assailant from Gerald Dobrusin, the owner of the store and pharmacist, and Dale Randall and Diane Penland (nee Oliver), employees of the store. Within one week, the complaining witness Dobrusin had made a positive photographic identification of defendant. Dobrusin had no further contact with the police regarding the matter until 1972.

In March of 1972, Dobrusin attended a lineup as a result of his own investigation. Dobrusin had talked with one of his pharmacist friends and discovered that a mutual friend's drugstore had been robbed. Dobrusin was given a description of the robber by his friend and, from that description, believed the perpetrator to be the same one that had robbed him some three years earlier. On his own initiative, Dobrusin attended a lineup held in connection with the second robbery and identified defendant.

Detective Frank Van Wulfen was the officer in charge of the case in 1968. Det. Van Wulfen testified that he had planned to arrange a showup, but was reassigned to the Criminal Intelligence Service of the Wayne County Sheriff's Office shortly after the robbery.

Detective Thomas Sheedy was the officer in charge of the 1972 robbery case. He testified that he came into this case in March, 1972, when

Dobrusin arrived at the jail on his own initiative, told him about the 1968 robbery, and expressed a desire to view the showup. Det. Sheedy also testified that the 1968 robbery investigation had never been reassigned after Det. Van Wulfen's transfer.

Following Dobrusin's identification of the defendant at the showup, a complaint was filed and a warrant was issued in April of 1972.

Defendant claims that he was prejudiced by this delay in that one alibi witness died in the interim and at least one other was unable to recall details; his ability to impeach the people's witnesses was impeded because the event took place so long previous to arrest and trial that the witnesses were unable to remember many details; and the testifying police officers made use of a composite record of several officers' notes, the originals of which were not available and presumably had been lost.

## II

### The Speedy Trial Claim

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * * ." US Const, Am VI. The Sixth Amendment speedy-trial provision has no application until the putative defendant in some way becomes an "accused". *United States v Marion,* 404 US 307, 313; 92 S Ct 455, 459; 30 L Ed 2d 468, 474 (1971). The Sixth Amendment "would seem to afford no protection to those not yet accused, nor would [it] seem to require the Government to discover, investigate, and accuse any person within any particular period of time." 404 US at 313; 92 S Ct at 459; 30 L Ed 2d at 474.

In this case, the right to a speedy trial attached when defendant was arrested. *People v Grimmett,* 388 Mich 590, 601–602; 202 NW2d 278, 283 (1972).

Since only three months elapsed between the time the defendant became an "accused" within the meaning of the Sixth Amendment and the trial, defendant was not denied a speedy trial as he contends.

### The Due Process Claim

In *People v Albert White,* 27 Mich App 432, 435; 183 NW2d 606, 607 (1970), *rev'd on other grounds,* 387 Mich 775 (1972), this Court reiterated that mere delay in arrest does not of itself amount to a violation of due process. The Court stated:

> " 'There is no constitutional right to be arrested.' *Hoffa v United States,* 385 US 293, 310; 87 S Ct 408; 17 L Ed 2d 374 (1966). Defendant must show specific prejudicial effect of the delay."

See also *People v Noble,* 18 Mich App 300, 302; 170 NW2d 916 (1969), *People v Thomas Smith,* 30 Mich App 34; 186 NW2d 61 (1971).

After a hearing on remand, the trial judge determined that no prejudice resulted to the defendant because of the delay. We concur.

Defendant claimed that he was prejudiced by the delay in that one alibi witness died in the interim. The death or unavailability of an alibi witness is an important factor to be considered in determining whether defendant was unduly prejudiced. *Dickey v Florida,* 398 US 30, 36; 90 S Ct 1564, 1568; 26 L Ed 2d 26, 31 (1970). However, it is not always prejudicial, as the Court found in *United States v Lee,* 413 F2d 910, 914 (CA 7, 1969). In that case, the death of two purported alibi

witnesses, during a delay of approximately two years, was found not to have prejudiced the defendant.

In the case at bar, defendant's sister testified that, on the night of the robbery, defendant was present at her home at a wedding anniversary celebration. In addition to defendant, 12 other people were present. Although it is true that one alibi witness died during the delay, only two of the remaining 11 potential alibi witnesses were called by defendant. In fact, his sister testified that defendant's wife, one of the potential alibi witnesses, was vacationing at the time of her husband's trial for armed robbery.

Further, after a hearing ordered by this Court to determine whether defendant was prejudiced, the trial judge stated:

"With the exception of the testimony of defendant's sister, this court finds that the testimony of the other witnesses for the defendant was so incredible, as to be totally unworthy of belief; and that, in any event, the testimony of any additional alibi witness would have been cumulative at the very best."

Under the circumstances in this case, defendant was not prejudiced by the death of one of his alibi witnesses.

Defendant also alleged that his ability to impeach the people's witnesses was impeded because the event took place so long previous to arrest and trial that the witnesses were unable to recall many details. Defendant argues that the delay served only to prejudice the defense, while assisting the prosecution. This allegation is anomalous. A review of the record shows that the defendant cross-examined the people's witnesses, and argued the credibility of the witnesses to the jury. The

credibility of the witnesses, both the people's and the defendant's, is a matter for the jury to decide. *People v Petrosky,* 286 Mich 397, 400; 282 NW 191, 192 (1938). The jury, mindful of the delays and their possible effect, found the defendant to be guilty. See *United States v Wilson,* 342 F2d 782, 783 (CA 2, 1965).

Defendant was not prejudiced in cross-examining the people's witnesses.

Finally, defendant contended that he was prejudiced because the testifying police officers made use of a composite record of several officers' notes, the originals of which were not available.

In assessing possible prejudice, the loss or destruction of police records is a matter to be taken into consideration. *Dickey v Florida, supra.* The Michigan Supreme Court has also stressed the importance of retention by the police of their original notes and records. *People v Poe,* 388 Mich 611, 620; 202 NW2d 320, 324 (1972). But every failure to keep notes does not require reversal, and so it is here. After hearing upon remand, the trial court stated:

"This court is also of the opinion that the fragmentary notes of Officer Van Wulfen which were apparently lost, were in view of the extensive cross-examination of this witness, nonprejudicial to the defendant."

We agree with the hearing judge. Defendant was not prejudiced by the loss of these notes.

Since defendant has failed to show any prejudice, we conclude that he was not denied due process of law by the delay between the occurrence of the offense and his arrest. Therefore we reverse our prior decision and affirm the conviction.

VAN VALKENBURG, J., concurred.

D. E. Holbrook, J. *(dissenting)*. This writer is unable to agree with the new opinion of my brothers in this case. This writer chooses to stand fast with the original opinion of the Court found at 53 Mich App 389; 220 NW2d 70 (1974).

Upon motion for rehearing, this case was remanded to the trial court for an evidentiary hearing with the burden on the prosecution[1] to determine: (1) whether the delay was explainable; (2) whether the delay was deliberate; and, (3) whether the defendant had been prejudiced by the delay. These three factors derive from *People v Hernandez*, 15 Mich App 141, 147; 170 NW2d 851, 854 (1968). *Hernandez* was based upon *Ross v United States*, 121 US App DC 233; 349 F2d 210 (1965). In *Ross* there was a purposeful delay of seven months, a plausible claim of inability to recall or reconstruct the events of the day of the offense, and the case was based upon one witness refreshed by a note book. *Id.* at 238; 349 F2d at 215. In the present case, while the delay was not purposeful it was six times as long, there is certainly a plausible claim of inability to recall or reconstruct the events of the evening by both prosecution and defense witnesses, and while there was more evidence here its continued viability is questionable in the light of time which has dimmed memories. Also it is well to consider *Woody v United States*, 125 US App DC 192, 194; 370 F2d 214, 216 (1966), which explains *Ross* and aids in understanding and verifying the position of this writer. In *Hernandez, supra,* it is stated that, precedent to the three factors coming to bear, *some* prejudice must be shown. Thus, at the outset, this writer notes that even to allow the evidentiary hearing, based

---

[1] "The longer the delay, the less burden on defendant in proof of prejudice." *United States v Lee,* 413 F2d 910, 912 (CA 7, 1969). The delay between the offense and arrest in *Lee* was ten months.

on these factors, the precedent condition was fulfilled in that this Court reasoned that the defendant had made a showing of some prejudice.

The trial court found at the hearing that the delay was explainable, that it was not deliberate and that defendant had not been prejudiced thereby. The trial court said: "No particular reason has been advanced for this failure to assign another officer to take charge." In the context of this case, this writer remains unconvinced that the delay was explainable other than that it was not pursued with diligence, thus showing negligence on the part of the authorities, but does accept the finding that the delay was not deliberate. The trial court further found that the case lay dormant, that no reason was advanced as to why another officer was not assigned to the case and that the delay may well have been due to this. The court said that "this delay was not occasioned by malice, was not intentional, and was indeed, quite inadvertent". Negligence in and of itself may be excused, but when coupled with a showing of prejudice, in a case such as this, negligence cannot excuse a delay in arrest.

While the right to a speedy trial per se does not attach until arrest,[2] *United States v Marion,* 404 US 307; 92 S Ct 455; 30 L Ed 2d 468 (1971), Mr. Justice BRENNAN's statement in his concurring opinion in *Dickey v Florida,* 398 US 30, 39, 51–52;

---

[2] "Yet a delay in filing charges often involves the very harms which the right [to speedy trial, US Const, Am VI] seeks to avoid. Like the convict who has been charged, the convict who expects to be charged may suffer anxiety which discourages rehabilitation, be prejudiced in his defense, and lose the chance of obtaining a concurrent sentence." *Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions,* 77 Yale L J, 767, 780–781 (1968).

*Cf. People v Fiorini,* 53 Mich App 389, 395–396; 220 NW2d 70, 72–73 (1974). Compare *Barker v Wingo,* 407 US 514, 532; 92 S Ct 2182, 2193; 33 L Ed 2d 101, 118 (1972).

90 S Ct 1564, 1569, 1575–1576; 26 L Ed 2d 26, 33, 40 (1970), in this regard, is instructive:

"When is governmental delay reasonable? Clearly, a deliberate attempt by the government to use delay to harm the accused, or governmental delay that is 'purposeful or oppressive,' is unjustifiable. *Pollard v United States,* 352 US 354, 361; 77 S Ct 481, 485; 1 L Ed 2d 393, 399 (1957). See also *United States v Provoo,* 17 FRD 183 (D Md), *aff'd per curiam,* 350 US 857; 76 S Ct 101; 100 L Ed 761 (1955). *The same may be true of any governmental delay that is unnecessary, whether intentional or negligent in origin.* A negligent failure by the government to ensure speedy trial is virtually as damaging to the interests protected by the right as an intentional failure; when negligence is the cause, the only interest necessarily unaffected is our common concern to prevent deliberate misuse of the criminal process by public officials. Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard. For a trivial objective, almost any delay could be reasonably avoided. Similarly, lengthy delay, even in the interest of realizing an important objective, would be suspect." (Footnotes omitted.) (Emphasis supplied.)

See also *United States v Smith,* 487 F2d 175, 178, fn 3 (CA 5, 1973).

Thus it is apparent that an attempted explanation on the basis of negligence alone will be insufficient. The resolution of a due process claim based upon governmental delay in arrest or indictment requires a balancing of reasonableness of the delay against the prejudice to the accused. *United States*

*v Jackson,* 504 F2d 337, 339 (CA 8, 1974), and
*United States v Norton,* 504 F2d 342, 344 (CA 8,
1974). See also *Ross, supra,* p 238; 349 F2d p 215,
and *Woody v United States, supra,* p 194; 370 F2d
p 216. "[T]he concern of the Due Process Clause is
erosion of the accused's capability to muster his
response to the charges." *United States v Parish,*
152 US App DC 72, 76; 468 F2d 1129, 1133 (1972),
*cert den,* 410 US 957; 93 S Ct 1430; 35 L Ed 2d 690
(1973).

In *United States v Feinberg,* 383 F2d 60, 65–66
(CA 2, 1967), the Court wrote:

"[I]t may well be that pre-arrest delay may
impair the capacity of the accused to prepare his
defense, and, if so, such impairment may raise a
due process claim under the Fifth Amendment, see
*Powell v United States,* 122 US App DC 229; 352
F2d 705, 707 (1965), or a Sixth Amendment claim
based upon the speedy trial guarantee, see *United
States v Simmons,* 338 F2d 804, 806 (CA 2, 1964);
*United States v Dickerson,* 347 F2d 783, 784 (CA 2,
1965). See also *Chapman v United States,* 376 F2d
705 (CA 2, 1967). For this reason we must inquire
whether there is a plausible claim of prejudice
resulting from the delay in arrest. See *Jackson v
United States,* 122 US App DC 124; 351 F2d 821,
823 (1965). Such a claim may arise if a key defense
witness or valuable evidence is lost, see *Petition of
Provoo,* 17 FRD 183, 203 (D Md), *aff'd per curiam,*
350 US 857; 76 S Ct 101; 100 L Ed 761 (1955), if
the defendant is unable credibly to reconstruct the
events of the day of the offense, see *Jackson v
United States, supra,* 351 F2d at 823, or if the
personal recollections of the government or de-
fense witnesses are impaired, *Ross v United
States,* 121 US App DC 233; 349 F2d 210, 213–214
(1965), because if any of these events occur the

reliability of the proceedings for the purpose of determining guilt becomes suspect."

The trial court found that defendant had not been prejudiced in that he presented alibi witnesses at trial. At the hearing the trial judge listened to several witnesses presented by defendant. The court stated:

"With the exception of the testimony of defendant's sister, this court finds that the testimony of the other witnesses for the defendant was so incredible, as to be totally unworthy of belief; and that, in any event, the testimony of any additional alibi witness would have been cumulative at the very best."

A review of the record of that hearing reveals that the questions asked these witnesses largely related to (1) whether they could remember the evening upon which the offense occurred and (2) whether there had been any discussion among the family as to defendant's situation. The witnesses answered largely vaguely as to the first and no as to the second.

It had been years since the evening in question and it is not an untoward response to conclude that the witnesses could simply not remember the evening. Further, whether there had been any discussion among the family is irrelevant. The finding that the additional alibi witnesses would have been cumulative at the very best is not controlling. The memories of both the people's and defense's witnesses had dimmed over the years. As the prosecution witnesses' memories dimmed, inconsistencies in their testimonies were less likely to be pointed out as fewer and fewer details could be remembered.

It is not surprising that defendant's witnesses

also were less able to recall details of the evening in question; this being so, their explanations of defendant's presence with them became less believable because they were unable to recall specifics which might have given credence to their statements that defendant was present with them. Just this argument was made by the prosecutor to the jury, *i.e.,* as to who was most believable—those who remembered defendant robbing the store or those who claimed he was at an anniversary party but remembered no details thereof. It is particularly true that defendant was prejudiced by this as the case was based upon eyewitnesses who had identified the defendant. In *United States v Wade,* 388 US 218, 228; 87 S Ct 1926, 1933; 18 L Ed 2d 1149, 1158 (1967), the Court said: "[T]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." Also see *People v Anderson,* 389 Mich 155, 173; 205 NW2d 461, 469 (1973).

It is interesting to note that the defendant has raised the same issue before the district judge, the circuit judge, the presiding judge, and in this appeal. The district court, while holding that it was unable to entertain defendant's motion to dismiss for lack of jurisdiction, found that the cause of the delay was nothing more than negligence and that defendant had been prejudiced on the basis, *inter alia,* that his alibi witnesses would not be as credible as they would have been had they promptly testified, that one witness had passed away, that another could not remember the circumstances, and that defendant was deprived of the ability to cross-examine prosecution witnesses due to their dimmed memory. That court stated that it was certain defendant had been prejudiced by the delay.

This writer is unable to conclude that the trial judge used the proper balancing test between the reasonableness of the delay and the prejudice to the defendant. The reliability of these proceedings to determine guilt is suspect.

There are further reasons why this writer is unable to agree with the majority in this case. Manifest among these is the fact that there were other issues presented in this appeal which were not dealt with in the first opinion, not the least of which is a question as to the possible abuse of discretion in the denial of a motion for continuance made by defendant.

Defendant had agreed to an advancement of trial date. Thereafter, he came before the presiding judge with a motion for continuance based upon the fact that certain of his prospective alibi witnesses were out of the country and his wife was in Ohio. Without specifically clarifying the reasons therefor, this motion was denied. Apparently the reasons surrounded a finding of cumulativeness of testimony of the alibi witnesses and the possibility that the preliminary examination testimony of defendant's wife could be introduced at trial. In *People v Harrison,* 44 Mich App 578, 590; 205 NW2d 900, 908 (1973), the Court wrote:

"At the trial level, prosecutorial claims of cumulativeness should be viewed with a jaundiced eye; on appeal, this Court will carefully scrutinize the lower court's ruling when it results in excusing the people from calling one whom they have a duty to produce as a witness, where, as here, defendant has made timely objection. We therefore reject the claim that the five witnesses whose endorsement defendant sought would have been cumulative."

Under the facts in this case, after so long a time,

fairness should have mandated that certain liberality be extended to defendant in order that he might be able to make a viable defense.

In *People v Charles O Williams,* 386 Mich 565, 575; 194 NW2d 337, 341–342 (1972), the Supreme Court quoted from *Ungar v Sarafite,* 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 (1964), thusly:

" 'The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v Alabama,* 308 US 444; 60 S Ct 321; 84 L Ed 377 (1940). *Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v Fretag,* 348 US 3; 75 S Ct 1; 99 L Ed 3 (1954). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v United States,* 352 US 385; 77 S Ct 431; 1 L Ed 2d 415 (1957).' (Emphasis added.)"

The Court went on to say, at 577; 194 NW2d 342, that: "[T]he desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance". Thereafter, is found a four-pronged approach as to the propriety of a motion for continuance: (1) whether the defendant asserted a constitutional right; (2) whether he had a legitimate reason for asserting this right; (3) whether he was guilty of negligence; and, (4) whether defendant had caused the trial to be adjourned before.

In this case, (1) defendant was asserting his constitutional right to present witnesses and evi-

dence in his own behalf, *i.e.,* rights to a fair trial
and due process of law;[3] (2) there was a legitimate
reason for asserting this right, *viz.,* an inability to
procure the attendance of individuals defendant
considered as vital witnesses; (3) there was no
negligence on the part of defendant in asserting
this right, as he asked for the continuance before
trial, having realized the unattainability of the
witnesses; and, (4) defendant had not attempted to
delay the judicial process, in fact he had agreed to
an advancement of the trial date of some ten days
and had not previously asked for a continuance.
The advancement agreement in and of itself
should have tipped the scales in favor of allowance
of the continuance, particularly when coupled with
the extreme delay in bringing defendant to trial.
This writer would find the denial of this motion an
abuse of discretion. This is particularly so as the
preliminary examination testimony of defendant's
wife was not allowed into evidence at trial.

Moreover, the use of the composite report of the
police was inappropriate. No viable reason for the
loss of the notes of the individual officers taken at
the scene was offered. The explanation that it was
normal procedure to throw away the notes is
untenable. See *People v Poe,* 388 Mich 611, 620;
202 NW2d 320, 324 (1972), and *People v Rosbor-
ough,* 387 Mich 183, 194–195; 195 NW2d 255, 261
(1972). This is more clearly true as there was
discrepancy in the initial description of the assail-
ant, *e.g.,* whether he was black or white, tall or
short, in the 150–160 pound class or 200 pounds as
was defendant, and whether he was 35–40 years of

---

[3] "Essential fairness is a fundamental due process requirement in
criminal prosecutions, and untoward delay in notifying the accused of
the charges to be pressed breeds unfairness by adversely affecting the
preparation and presentation of his defense." *United States v Parish,*
152 US App DC 72, 76; 468 F2d 1129, 1133 (1972), *cert den,* 410 US
957; 93 S Ct 1430; 35 L Ed 2d 690 (1973).

age or 50 as was defendant. Defendant's cross-examination of the officers and secondary questioning as to the propriety of the narrowing of the investigation to the point where defendant's pictures were shown was severely hindered.

Previously, we noted that the prosecution in this case "bears a very heavy burden of justification". *People v Fiorini,* 53 Mich App 389, 396; 220 NW2d 70, 73 (1974). This writer fails to see that that burden has been met.

"[A] delay of 43 months in this case requires an appropriate explanation. The prosecution having not explained the delay, * * * and it appearing that defendant has shown that he has been prejudiced, * * * " *(Id.* at 398; 220 NW2d at 74).

therefore, the defendant's conviction should be reversed, and this writer so votes. In the event that this case is appealed to and accepted by the Supreme Court, and it is determined that the original opinion is incorrect, then this writer would respectfully suggest that the Supreme Court consider the right of defendant to a new trial.